COMMONWEALTH *vs.* J. O. ZIMMERMAN.

Suffolk.    March 15, 1915. — May 20, 1915.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Physicians and Surgeons.    License.    Chiropractic.    Constitutional Law. Words,* "Medicine."

One who calls himself a chiropractor and, without a license to practice medicine, is engaged in the practice of chiropractic, which "is the specific science that removes pressure upon the nerves by the adjustment of spinal vertebrae" by hand only without the use of instruments, may be found guilty of practicing medicine without a license within the meaning of R. L. c. 76, § 8.

R. L. c. 76, § 8, providing penalties for practicing medicine within this Commonwealth without a license is constitutional.

The provision of R. L. c. 76, § 9, that the provisions of § 8 of the same chapter prescribing penalties for practicing medicine without being authorized to do so and registered "shall not apply to . . . osteopathists, pharmacists, clairvoyants, or persons practicing hypnotism, magnetic healing, mind cure, massage, Christian science or cosmopathic method of healing, if they do not violate any of the provisions of section eight," does not render the statute unreasonable toward a person practicing chiropractic who is convicted under § 8 of practicing medicine without a license, nor does it deny to such person the equal protection of the laws.

COMPLAINT, received and sworn to in the Municipal Court of the City of Boston on February 20, 1914, charging that the defendant at Boston on December 15, 1913, and on divers other days between that day and the day on which the complaint was received and sworn to, did practice medicine without being lawfully authorized to do so and registered, in violation of R. L. c. 76, § 8.

On appeal to the Superior Court the defendant was tried before *Dana, J.* The only defence was that the defendant was a chiropractor and that his acts were not in violation of the statute on which the complaint was based. The evidence is described in the opinion. The bill of exceptions stated that the judge "without objection or exception, stated to the jury that the defendant did not claim that he came within any of the exemptions of R. L. c. 76, § 9; that he did not claim that he was an osteopath; and also that he claimed that what he did for persons resorting to him was something different from massage."

At the close of the evidence, the defendant asked the judge to rule that upon all the evidence the jury would not be warranted in finding the defendant guilty, and to direct the jury to return a verdict of not guilty. This the judge refused to do.

The defendant then asked the judge to make various rulings and, among other requests, asked him to rule that the provisions of R. L. c. 76, §§ 8, 9, were unconstitutional as applied to the defendant as being in violation of art. 6, 7 of the Declaration of Rights and in violation of the Fourteenth Amendment to the Constitution of the United States.

The judge refused to make this ruling or any other of the rulings requested by the defendant except so far as they were em-

bodied in his charge. The jury returned a verdict of guilty; and the defendant alleged exceptions.

R. L. c. 76, §§ 8, 9, are as follows:

"Section 8. Whoever, not being lawfully authorized to practice medicine within this Commonwealth and registered as aforesaid, holds himself out as a practitioner of medicine, or practices or attempts to practice medicine in any of its branches, or whoever practices medicine or surgery under a false or assumed name, or under a name other than that by which he is registered, or whoever personates another practitioner of a like or different name, shall, for each offence, be punished by a fine of not less than one hundred nor more than five hundred dollars or by imprisonment for three months, or by both such fine and imprisonment. In a case in which a provision of this or the preceding section has been violated, the person who committed the violation shall not recover compensation for services rendered.

"Section 9. The provisions of the eight preceding sections shall not be held to discriminate against any particular school or system of medicine, to prohibit medical or surgical service in a case of emergency, or to prohibit the domestic administration of family remedies. They shall not apply to a commissioned medical officer of the United States army, navy or marine hospital service in the performance of his official duty; to a physician or surgeon from another State who is a legal practitioner in the State in which he resides, when in actual consultation with a legal practitioner of this Commonwealth; to a physician or surgeon residing in another State and legally qualified to practice therein, whose general practice extends into the border towns of this Commonwealth, if such physician does not open an office or designate a place in such towns where he may meet patients or receive calls; to a physician authorized to practice medicine in another State, when he is called as the family physician to attend a person temporarily abiding in this Commonwealth; nor to registered pharmacists in prescribing gratuitously, osteopathists, pharmacists, clairvoyants, or persons practicing hypnotism, magnetic healing, mind cure, massage, Christian science or cosmopathic method of healing, if they do not violate any of the provisions of section eight."

The case was submitted on briefs.

*S. L. Long* (of Missouri), *& N. Sternseher,* for the defendant.

*J. C. Pelletier,* District Attorney, *T. D. Lavelle & A. C. Webber,* Assistant District Attorneys, for the Commonwealth.

Rugg, C. J.   The defendant has been found guilty of violation of R. L. c. 76, § 8, in that he practiced medicine without being lawfully authorized.  He defends on the ground that he is a chiropractor and that his acts do not constitute a violation of the statute.  The evidence tended to show that he kept an office in Boston, indicated by a sign on which was his name followed by the word, chiropractor; that he practiced for pay; that he said that the basis of chiropractic is the adjustment of the vertebrae of the spine; that the vertebrae when not in their normal positions press upon the nerves at the spine; that the malposition of these vertebrae was the cause of abnormality and that an adjustment of these vertebrae to their normal positions would remove the pressure at the spine; that he said that he did not cure, that he simply adjusted.  He testified that "chiropractic is the specific science that removes pressure upon the nerves by the adjustment of spinal vertebrae.  There are no instruments used.  It is done by hand only."  The treatment pursued by the defendant was to have those who resorted to him go into an inner room and remove their outer garments until they were stripped to the waist.  The patient then took a sitting position.  The defendant examined down the spine, beginning at the top, by feeling with his fingers to see whether each vertebra was in its proper position.  The method to discover whether a vertebra was out of position was by making a gliding move of the three middle fingers of the right hand, which constituted the process of "palpation" whereby one vertebra was compared with another.  As a result of this "analysis" the defendant was able to tell whether vertebrae were out of alignment or out of their normal positions.  In making "adjustments," the patient was placed on a low table with face downward and the vertebra which was out of condition was given a quick thrust or push by the hands of the defendant.  The acts performed by the defendant constitute, first, an examination of the vertebrae of the spinal column and a determination whether they are in a normal or in an unnatural position; and, second, a manipulation of such of the vertebrae as are found to be out of position, so that they will become regular and correct with reference to each other.  Although

the defendant did not prescribe medicine, and testified that he paid no attention to the patient's description of symptoms or disease, yet it is obvious that his purpose was to treat the human body in order to make natural that which he found abnormal in the narrow field of his examination. The removal of pressure upon nerves is a means of relieving the ills flowing from that source. "Chiropractic" is defined as "A system of healing that treats disease by manipulation of the spinal column." Webster's International Dictionary. The defendant's manipulation was of a most important part of the body and related to a nerve centre. It might have been found that it could have no other aim than a prevention of disease or relief from existing disarrangement of body functions. That which the defendant did and its manifest purpose might have been found to be practicing medicine within the meaning of the statute. Medicine relates to the prevention, cure and alleviation of disease, the repair of injury, or treatment of abnormal or unusual states of the body and their restoration to a healthful condition. It includes a broad field. It is not confined to the administering of medicinal substances or the use of surgical or other instruments. It comprehends "a knowledge, not only of the functions of the organs of the human body, but also of the diseases to which these organs are subject, and of the laws of health and the modes of living which tend to avert or overcome disease, as well as of the specific methods of treatment that are most effective in promoting cures." Knowlton, C. J., in *Commonwealth* v. *Jewelle*, 199 Mass. 558, 560. In order to practice medicine one need not cover the entire field of the science. If he devotes himself to a very restricted part of it, he still may be found to practice medicine. It is matter of common knowledge that there has been great specialization in that profession in recent years. To that effect are the decisions. *Commonwealth* v. *Porn*, 196 Mass. 326. *People* v. *Gordon*, 194 Ill. 560. *Witty* v. *State*, 173 Ind. 404. *People* v. *Allcutt*, 117 App. Div. 546, affirmed in 189 N. Y. 517.

It is of no consequence that the defendant abstained from the use of the words "diagnosis," "treatment," or "disease" in description of what he did, and employed the terms "analysis," "palpation" and "adjustment." The acts which he did and their manifest design are to be examined rather than the words used, in order to ascertain the true nature of the defendant's conduct. A

physical examination of the vertebrae, a decision whether they are in normal position or not, and strong manual pressure upon them with the end of changing the position with reference to each other of those found to be irregular, and thereby relieving pressure upon nerves, may be found to have such relation to the cure or prevention of disease or the relief of pain as to constitute the practice of medicine. Numerous decisions upon kindred facts point in the same direction. *State* v. *Corwin*, 151 Iowa, 420. *Green* v. *Hodges*, 91 Kans. 658. *State* v. *Smith*, 233 Mo. 242. *Swarts* v. *Siveny*, 35 R. I. 1. *State* v. *Greiner*, 63 Wash. 46.

The judge stated to the jury, without objection or exception, that "the defendant did not claim that he came within any of the exemptions of § 9 of c. 76 of the Revised Laws." Hence it is not open to the defendant now to contend that his practice rightly may be described as "cosmopathic method of healing," the final exception in § 9. Even if this point had been saved, there is nothing in it. "Cosmopathic" is defined in the New Standard Dictionary as "Open to the access of supernormal knowledge or emotion, supposedly from a preternatural world." Without undertaking to decide what a "cosmopathic method of healing" may be, plainly it does not include the defendant's operations.

The statute as thus construed is constitutional. That was decided in *Commonwealth* v. *Porn*, 196 Mass. 326, and affirmed in *Commonwealth* v. *Jewelle*, 199 Mass. 558. A somewhat similar statute was upheld in *Hewitt* v. *Charier*, 16 Pick. 353. To the same effect in principle are *Dent* v. *West Virginia*, 129 U. S. 114, and *Collins* v. *Texas*, 223 U. S. 288, and cases there cited. See also *State* v. *Johnson*, 84 Kans. 411. The protection of the public from those who undertake to treat or manipulate the human body without that degree of education, training and skill which the Legislature has prescribed as necessary to the general safety of the people is within the police power of the State. This general purpose may be effectuated by requiring even of those who propose to confine their practice to a narrow specialty a much broader knowledge of the subject provided such qualification is regarded by the Legislature as necessary for the practice of any branch of medicine. The statute does not impair in any constitutional sense the liberty of the defendant. The protection of the public health is an object of such vital importance to the welfare of the State that

any rational means to that end must be upheld. The defendant is placed in no worse position than others. The circumstance, that R.L. c. 76, § 9, to an extent, see *Commonwealth* v. *DeLon,* 219 Mass. 217, exempts certain classes, such as osteopaths and pharmacists, and those practicing Christian science, mind cure, massage and others, does not render the statute unreasonable as to the defendant nor deny to him the equal protection of the laws. Reasonable classification is within the power of the Legislature. Its determination in this regard cannot be overthrown upon the facts disclosed on this record. Every constitutional aspect of the statute is so fully covered by the decisions above cited that further discussion would be superfluous.

*Exceptions overruled.*