STATE v. B. ELIZABETH ROLPH.[1]

May 17, 1918.

No. 20,776.

**Physician and surgeon — license to practice — what constitutes practice.**

The act of a person who styles himself a doctor, in receiving a patient who has applied to him for medical attention, and examining such person and diagnosing his ailment or disease and recommending an operation as treatment therefor, is practicing medicine within the meaning of our statute prohibiting the practice thereof without license, though he prescribes no drug and administers no specific treatment to the patient.

Defendant was indicted by the grand jury charged with the crime of practicing medicine without a license, tried in the district court for Yellow Medicine county before Daly, J., who when the state rested denied defendant's motion for a directed verdict. At the opening of the trial defendant objected to the introduction of any testimony on the ground that the indictment did not state facts sufficient to constitute a public offense or the violation of any law of the state. The objection was overruled. The jury returned a verdict of guilty. From an order denying her motion for a new trial, defendant appealed. Affirmed.

[1]Reported in 167 N. W. 553.

*J. M. Freeman* and *J. L. Lauermann,* for appellant.

In Ohio the practice of osteopathy was held not to be within the purview of a statute almost identical to the Minnesota statute. Eastman v. State, 4 Ohio N. P. 163, 4 Ohio Dec. 296; State v. Liffring, 61 Ohio St. 39, 55 N. E. 168, 46 L.R.A. 334. In Arkansas a similar decision was rendered under a like statute. State v. Gallagher, 101 Ark. 593, 143 S. W. 98, 38 L.R.A.(N.S.) 328. See State v. Biggs, 133 N. C. 729, 46 S. E. 401, 64 L.R.A. 139. In every case examination of the patient and diagnosing of his physical ailments were present, but it was not contended they constituted the practice of medicine. If the examination of the patient, the diagnosing of his ailment and the manipulation of his body together do not constitute practicing medicine, it surely cannot be said that the first two constitute that offense.

*Lyndon A. Smith,* Attorney General, *James E. Markham,* Assistant Attorney General, and *H. P. Bengtson,* County Attorney, for the state.

Section 4971, G. S. 1913, provides as a condition to the issue of a license to practice medicine that the applicant shall pass a satisfactory examination in specified subjects, the diagnosis and treatment of medical and surgical diseases, and such other branches as may be prescribed by the board of examiners. These requirements are indicative of the meaning of the expression "practice medicine." Generally speaking, any person has a right to pursue any lawful calling, but in respect to certain occupations, not in themselves unlawful, this right is necessarily subject to legislative restrictions from considerations of public policy. In medicine, as in law, so injurious are the consequences likely to result from a lack of special qualification in the practitioner, that the power of the legislature to prescribe such reasonable conditions as are calculated to exclude those who are unfitted to discharge professional duties, cannot be doubted. State v. State M. E. Board, 32 Minn. 324, 20 N. W. 238. The words "practice of medicine" are used in the broad and popular sense in which they are generally understood. Stewart v. Raab, 55 Minn. 20, 56 N. W. 256. See Underwood v. Scott, 43 Kan. 714. Under Laws 1883, p. 167, c. 125, the gist of the offense is that an unlicensed person has practiced medicine, and the fact that the accused has for a fee prescribed or recommended for the use of another a drug or medicine or other agency for

the treatment of disease is one kind of evidence of guilt, and not the exclusive substance of the offense. State v. Oredson, 96 Minn. 509, 105 N. W. 188. Many physicians of the highest standing in their profession devote their skill and attainments solely to the diagnosis of diseased conditions and never perform an operation or prescribe an ounce of medicine. Yet, if appellant's contention be sustained, the post of diagnostician in our great hospitals might be held by an uneducated person possessing no knowledge of medicine or surgery.

BROWN, C. J.

Defendant was indicted by the grand jury of Yellow Medicine county and thereby charged with the crime of practicing medicine without a license in violation of section 4981, G. S. 1913. On a trial of the issues presented by her plea of not guilty she was convicted and thereafter appealed from an order denying a new trial.

The statute on which the prosecution is founded declares that any person who shall practice medicine in this state without first obtaining a license therefor shall be guilty of a misdemeanor and punished in the manner and to the extent thereby prescribed. The statute further provides that a person shall be treated as practicing medicine within the meaning thereof who appends to his name the letters, M. D. or M. B., or for a fee prescribes or recommends for use by any person any drug or medicine or other agency for the relief or treatment of bodily injury, infirmity or disease.

The principal contentions in support of the appeal are: (1) That the indictment fails to state facts constituting a violation of the statute; and (2) that the evidence is insufficient to support the verdict of guilty. We consider these in the order stated.

1. The indictment contains no direct general charge of practicing medicine without a license, the charging part thereof being limited to the specific acts deemed by the state a violation of the statute. It is not in the best form. It might well have charged a violation of the statute in the language thereof, and set forth the acts constituting such violations in general terms, illustrated by the case of State v. Edmunds, 127 Iowa, 333, 101 N. W. 431, rather than by pleading the specific acts constituting the crime. Parks v. State, 159 Ind. 211, 64 N. E. 862, 59 L. R. A. 190; State v. Flanagan, 25 R. I. 369, 55 Atl. 876; White v.

Circuit Judge, 133 Mich. 93, 94 N. W. 601. But, if the acts so specifically pleaded constitute a violation of the statute, the indictment is sufficient though it does not charge a commission of the crime in general terms. In the caption or introductory part of the indictment the crime of which defendant is accused is named or designated as that of "practicing medicine without a license, committed as follows." But that forms no part of the specific charge. State v. Howard, 66 Minn. 309, 68 N. W. 1096, 34 L.R.A. 178, 61 Am. St. 403. And as just stated if the facts which follow in the formal charging part of the indictment show a violation of the law it is sufficient. 2 Dunnell, Minn. Dig. §§ 4360, 4366. State v. Nelson, 79 Minn. 388, 82 N. W. 650, is not in point. There was no direct charge of any kind in the indictment there before the court.

2. The evidence, which is without serious conflict, discloses the following facts: Defendant is not a licensed physician and surgeon. She is a chiropractor and for the past few years has been engaged at Minneapolis, her place of residence, in the practice of what has come to be well known as the chiropractic system of healing human diseases and alleviating human ailments. Webster, New International Dic. 386; Nelson, Enc.; Words & Phrases (2d Series) 684. Some time prior to the date charged in the indictment she advertised that she would be at Granite Falls on a given date, to remain for a period of three days, for the purpose of extending relief to those who might apply to her. She held herself out as Dr. B. Elizabeth Rolph, and posters were distributed announcing her coming. Cards with her name as just stated were placed on the door of her rooms at the hotel where she received patients. She was accompanied by a nurse who assisted in the examination of persons applying for help, and in the administration of the treatment given them. They shared equally in the profits. The person named in the indictment, and who was treated by defendant, had been in ill health for a long time and she applied to defendant for relief at the time and place stated in the indictment. She was received as a patient and an examination and diagnosis made by defendant, assisted by the nurse, disclosed an abdominal tumor, and for this defendant recommended an operation by some competent surgeon. Defendant did not attempt to treat that condition. But at the same time and occasion she did apply to the patient the usual chiropractic treatment, and at the conclusion of

140 M.—13.

all a. fee of two dollars was charged, which the patient paid. Some little question arises at this point as to whether the fee was paid for the preliminary examination or diagnosis or for the treatment. But the dispute is not of serious moment. The examination and treatment constitute one transaction, and whether the fee was exacted for the treatment, excluding the diagnosis, was a fair question of fact. The trial court held it to be immaterial. The patient later submitted to an operation at the hands of a surgeon. The evidence also shows that on this occasion of her visit to Granite Falls defendant administered the chiropractic treatment to other patients who applied therefor, the same fee being charged and paid by each. Of this there is no dispute, though it is important only as disclosing that the examination of the particular patient with the advice of an operation was not an isolated transaction or a neighborly act. Defendant held herself out as a doctor, and the examinations made by her were for the purpose of discovering any disease or ailment from which patients might be suffering, and of treating the same if within the scope of her practice as a chiropractor.

The evidence in our view of the case clearly justified the jury in finding the facts substantially as charged in the indictment, and thereon in concluding that defendant was practicing medicine within the meaning and in violation of our statutes. State v. Oredson, 96 Minn. 509, 105 N. W. 188; Whitlock v. Com. 89 Va. 337, 15 S. E. 893; Antle v. State, 6 Texas App. 202.

The science of diagnosing human diseases and human ailments has come to be a distinct branch or department of the medical profession; the diagnostician limiting his efforts to a discovery of the disease or ailment from which a patient may be suffering, its character and location, leaving the treatment thereof to some other physician or surgeon. This is a matter of common knowledge. And it requires no discussion or argument to demonstrate that the physician who thus applies his learning and energies is performing a highly important duty of the profession, and is engaged in the practice thereof, though he prescribes no drug and administers no specific treatment. If a physician so limiting his services is practicing medicine, of which there can be no doubt, then in the case at bar the question whether the defendant in diagnosing the ailment of the person named in the indictment was likewise engaged, was at least

a question for the jury. The evidence supports the verdict.

We do not stop to inquire into the question whether a practice of the chiropractic system of healing unaccompanied with acts of diagnosis like those here shown would constitute a violation of the statute. The question is not involved. The system is well known to the courts and there are numerous adjudications thereon. Com. v. Zimmerman, 221 Mass. 184, 108 N. E. 893, Ann. Cas. 1916A, 858; Board of M. E. v. Freenor, 47 Utah, 430, 154 Pac. 941, Ann. Cas. 1917E, 1156; Swarts v. Siveny, 35 R. I. 1, 85 Atl. 33; State v. Johnson, 84 Kan. 411, 114 Pac. 390, 41 L.R.A.(N.S.) 539; State v. Gallagher, 101 Ark. 593, 143 S. W. 92, 38 L.R.A.(N.S.) 328 and other cases cited in L.R.A. 1917C, 823.

The record presents no reversible error.

Order affirmed.