## STATE v. FLORENCE DE GUILE.[1]

July 18, 1924.

No. 24,026.

**Barbering act not applicable to women engaged in bobbing women's hair.**
    Chapter 424, Laws 1921, regulating the occupation of barbering and
    providing penalties for the violation of the act, is not applicable to
    women employed in so-called beauty parlors who dress and cut or bob
    women's hair.

Defendant was charged in the municipal court of Minneapolis
with the offense of unlawfully employing an unlicensed barber,
tried before Reed, J., who when plaintiff rested denied defendant's
motion to dismiss the proceeding, found her guilty of the offense
charged, and sentenced her to 30 days' imprisonment. From the
judgment entered, defendant appealed. Reversed.

*Frederick N. Dickson* and *O. J. Ertsgaard,* for appellant.

*Clifford L. Hilton,* Attorney General, *Rollin L. Smith,* Assistant
Attorney General, and *Neil M. Cronin,* City Attorney, for respond-
ent.

LEES, C.

Defendant was convicted in the municipal court of the city of
Minneapolis of a violation of chapter 424, p. 655, Laws 1921, and
appeals from the judgment of conviction sentencing her to im-
prisonment for 30 days.

The complaint charged and the state proved that she conducted
a so-called beauty parlor, where one of her employes cut a woman's
hair for a price paid to defendant, such employe not having ob-
tained a certificate of registration or permit from the State Exam-
ining Board of Barbers and not being a student in a school for
barbers or an apprentice holding a permit from the Barbers' Board.

Defendant testified that she had conducted a beauty parlor in
Minneapolis since the year 1911, where she had always dressed and

[1]Reported in 199 N. W. 569.

trimmed women's hair, and that neither she nor any of her employes ever shaved men or trimmed their beards or cut their hair. There was no contradiction of her testimony.

The real issue is whether a woman conducting a place of business where women's hair is bobbed must comply with the provisions of chapter 424.

The object of the act, as expressed in its title, is "to regulate the occupation of barbering." That occupation was first subjected to regulation by the enactment of chapter 186, p. 346, Laws 1897. That act was sustained in State v. Zeno, 79 Minn. 80, 81 N. W. 748, 48 L. R. A. 88, 79 Am. St. 422, upon the theory that it was a measure designed to protect the public health. We are informed that in the 27 years which have since elapsed this is the first prosecution of the proprietress of a beauty parlor under the provisions of either the original or the present statute. The notion that, if a woman's hair was cut in such a place, the place became a barber shop and the employes barbers subject to regulation in order to safeguard the health of the public, does not seem to have occurred to anyone until bobbed hair became the vogue.

Chapter 424 is replete with references to barbers and the occupation of barbering. Section 23 defines the occupation as follows:

"To shave or trim the beard or cut the hair of any person for hire, or reward, received by the person performing such service, or any other person, shall be construed as practicing the occupation of barber within the meaning of this act."

Similar definitions are given in the dictionaries, with the additional information that formerly barbers also practiced surgery and dentistry and were called barber-surgeons. In the common understanding, there is a marked difference between a barber shop and a beauty parlor. Not until this prosecution was begun does it seem to have occurred to anyone that women employed in beauty parlors, who perform there the services required by the feminine patrons of such places, became barbers when they bobbed a customer's hair. The state's case rests on the phrase "to cut the hair of any person for hire," found in section 23. Are we justified in imputing to the

legislature an intention to bring within the scope of the act every person who cuts another's hair for hire, no matter where or under what circumstances it is done?

The statute is in derogation of common right; conduct devoid of moral turpitude is made criminal by legislative fiat. It is a familiar rule of construction that a statute regulating conduct which is not criminal or wrongful unless it has been made so by the statute is to be strictly construed, and the statute is not to be extended by implication to classes not clearly within its terms. The rule is well expressed in State v. Small, 29 Minn. 216, 218, 12 N. W. 703, and in State v. Finch, 37 Minn. 433, 434, 34 N. W. 904. In the first case, speaking of the doctrine that penal statutes are to be construed strictly, the court said:

"By this rule nothing more is meant than that penal statutes shall not, by what may be thought their spirit and equity, be extended to offences other than those which are specifically and clearly described and provided for. The reason of the rule is that the law will not allow of constructive offences."

In the second, this was said:

"In construing such statutes, we should be careful to distinguish between what may have been desirable in the enactment in order that it should effectually accomplish its purpose, and what has been really prohibited or commanded by it. Before conduct hitherto innocent can be adjudged to have been criminal, the legislature must have defined the crime, and the act in question must clearly appear to be within the prohibitions or requirements of the statute. * * * It is not enough that the case may be within the apparent reason and policy of the legislation upon the subject, if the legislature has omitted to include it within the terms of its enactments."

The rule has been followed in subsequent cases, of which the last is Gutterson v. Pearson, 152 Minn. 482, 189 N. W. 458, 24 A. L. R. 519, where the so-called blue sky law was construed.

A reading of chapter 424 leaves a serious doubt in the mind as to whether the act with which defendant is charged is within the prohibition of the statute. Certainly the offense of which she is

accused is not "specifically and clearly described and provided for," unless we look only at a phrase in section 23 and shut our eyes to the language of other sections of the statute.

Defendant testified that women began to have their hair bobbed in the year 1918, and that the fashion of wearing bobbed hair has grown in popularity ever since. We must presume that when chapter 424 was enacted the legislature was aware of these facts and knew that women went to beauty parlors to have their hair cut or trimmed. If the act was intended to apply to such places, or to persons employed in them who cut women's hair, it would have been easy to say so. The omission of any specific mention of them or of the persons employed in them is significant. It is also significant that those charged with the administration of the law did not undertake to enforce it against persons in defendant's situation until the close of the year 1923. It is a matter of common knowledge that in the 1923 session of the legislature a bill was introduced to regulate beauty parlors, but failed of passage. This circumstance indicates that the legislature considered chapter 424 inapplicable to persons employed in such places.

But one reported case bearing on the subject has been called to our attention. It is Keith v. State Barber Board, 112 Kan. 834, 212 Pac. 871. The Kansas act differs from our own in that it contains no definition of the word "barber," but the purpose of both acts is the same and the reasoning of the court is equally applicable to our act. As was said in that case, if women who cut the hair of other women in beauty parlors "are to be brought within the discipline of a regulating board, it should be by virtue of new legislation rather than by an extension of the scope of the existing law."

The judgment appealed from is reversed.