CENTRAL TRUST COMPANY *vs.* JOHN H. HOWARD.

Suffolk.    November 10, 1930. — April 1, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, & FIELD, JJ.

*Tax*, Excise on banking corporation, Waiver under St. 1930, c. 214. *Words*, "Or."

A bank, against which, in October, 1929, under G. L. c. 63, § 36, were assessed additional excise taxes for 1926, 1927 and 1928, and which, without having paid such additional taxes, filed a waiver under St. 1930, c. 214, could not maintain a suit in equity thereafter commenced to enjoin the collection of such taxes by the sale of certain of its property under warrants issued by the commissioner of corporations and taxation.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on July 16, 1930.

The plaintiff sought to enjoin the collection of additional excise taxes assessed for the years 1926, 1927 and 1928. Material facts alleged in the bill appear in the opinion. The answer substantially admitted the allegations of the bill. It was stipulated that the taxes in question were assessed on October 15, 1929, under G. L. c. 63, § 36. The suit was heard by *Wait*, J., on the bill, answer, and stipu-

lation, and a decree was entered dismissing the bill. The plaintiff appealed.

*C. M. Rogerson*, for the plaintiff.

*C. F. Lovejoy*, Assistant Attorney General, for the defendant.

RUGG, C.J.  The plaintiff seeks by this suit in equity to enjoin the collection of additional excise taxes by the sale of certain of its bonds seized by the defendant as constable under warrants issued to him by the commissioner of corporations and taxation.  Because the net income of the plaintiff as returned to the Federal government has been increased for the several years in question, these taxes for those years were assessed on October 15, 1929, under G. L. c. 63, § 36, on that increased income.  Demand was made for the payment of these additional taxes on, or about June 18, 1930.  The plaintiff did not pay them.  On July 11, 1930, the warrants were issued on which the bonds were seized.  On July 14, 1930, St. 1930, c. 214, became operative.  That act is entitled "An Act providing for the refunding of certain illegal or excessive bank taxes."  The provisions of said c. 214 material to this decision are: "Any bank, . . . which, within thirty days after this act takes effect . . . shall have filed a waiver . . . of any right which it may have to the abatement or recovery of any taxes, assessed upon it with respect to its income returnable under the provisions of" G. L. c. 63, in 1926, 1927, 1928 and 1929, "and paid by it, shall be entitled to have refunded to it, in the manner hereinafter provided, a sum equal to that part of the tax assessed and paid by it, which was upon or measured by so much of its income returnable in the year nineteen hundred and twenty-nine as was derived from interest upon bonds, notes or certificates of indebtedness of the United States or of the commonwealth of Massachusetts or its political subdivisions, or of any federal instrumentality, which would not be taxable under chapter sixty-two of the General Laws if received by an individual inhabitant of the commonwealth, with interest thereon . . . and no further taxes under said chapter sixty-three or under any laws revived under section thirteen of chapter three hundred

and forty-three of the acts of nineteen hundred and twenty-five, as amended by chapter two hundred and twenty-two of the acts of nineteen hundred and twenty-six, shall be assessed against or collected from any .such bank with respect to the years for which it shall have filed a waiver as herein provided. The amount of refund so certified to each bank shall be applied by said commissioner to the payment of its tax to be assessed under said chapter sixty-three in the year nineteen hundred and thirty, and any excess of such refund over the amount of said tax shall be paid out of the treasury of the commonwealth, without appropriation."

The plaintiff filed a waiver under this statute. The date of such filing does not appear, but it must have been after the effective date of the statute and before July 16, 1930, when the present suit was instituted. The plaintiff contends that thereby there sprang into existence a contract between it and the Commonwealth that it would waive all rights to contest the validity of taxes paid by it for the years in question, and in return for that waiver no additional taxes were to be either assessed to it or even collected from it, if already assessed, by the Commonwealth, and that the only adequate relief open to it is by the present suit. The defendant contends that there is no jurisdiction in equity to prevent the collection of the tax and that the statute rightly construed does not prevent the collection of taxes already assessed but not paid.

The meaning of said c. 214 is to be ascertained in the light of certain matters of general legislative and judicial knowledge. The tax laws of the Commonwealth touching national banks and trust companies had given rise to considerable litigation and had led to the enactment of new tax laws designed to adjust differences and to afford a sound basis for future taxation. *Collector of Taxes of Boston* v. *National Shawmut Bank of Boston*, 259 Mass. 14. *Macallen Co.* v. *Commonwealth*, 264 Mass. 396, 411. One of the statutes enacted to that end was held to be contrary to provisions of the Federal Constitution in *Macallen Co.* v. *Massachusetts*, 279 U. S. 620. That decision affected provisions of the tax

law in their operation upon corporations of the class to which the plaintiff belongs. The precise extent of the havoc of our tax laws wrought by that decision has never been authoritatively decided, although an advisory opinion upon some aspects was given in *Opinion of the Justices*, 269 Mass. 611. In any event, revision of those provisions of the tax law appeared to be highly desirable, if not necessary. One step among others in that direction was the enactment of said c. 214. It was in part designed to avert controversy, to stem litigation, and to assure the stability of the finances of the Commonwealth by agreement with the interested taxpayers as to taxes already collected.

It is assumed in favor of the plaintiff for the purposes of this decision that the terms of said c. 214 are couched in the phrase of a contract, that, according to its words, when the plaintiff filed the waiver, it thereby became "entitled to have" certain refunds credited to it to be applied to the payment of its 1930 excise taxes, to receive the balance, if any, in cash and to be free as specified from further taxation for those years; that the controversies thereby to be settled were substantial and not fanciful, and therefore constituted sufficient consideration for a binding contract, *Silver* v. *Graves*, 210 Mass. 26, and that the General Court under the Constitution is clothed with power to make a contract of such nature, in the public interests touching public rights and public property, between the Commonwealth and any person with whom it has relations. See *Boston & Lowell Railroad* v. *Salem & Lowell Railroad*, 2 Gray, 1, 32; *Boston* v. *Treasurer & Receiver General*, 237 Mass. 403, 416; *Opinion of the Justices*, 261 Mass. 523, 551, 552.

After making those assumptions in favor of the plaintiff, the question is presented as to the interpretation of the contract thus made, with special reference to the contention of the plaintiff that, although it has not paid the additional excise taxes already assessed, the Commonwealth has barred itself by the terms of the statute from collecting that additional assessment. It is to be observed that the offer of the statute is to those banks which file the required waiver as to "any taxes, assessed upon it . . . and paid

by it" with respect to the years specified. The implication of this language is that all taxes actually assessed shall have been paid in order that the bank may bring itself within the scope of the offer. A part of the correlative obligation of the Commonwealth is that "no further taxes . . . shall be assessed against or collected from any such bank" for the years in question. The whole basis of the statute is that all the taxes, as to which the waiver by the bank is effective and the obligation is assumed by the Commonwealth, shall have been paid. It is the duty of everybody to pay the taxes duly assessed upon him. Most people perform that duty with reasonable promptness; otherwise government would be impeded for want of money. It may be presumed that financial institutions such as banks enjoying privileges under governmental regulation would be alert to see that their obligations to government would be met as and when due. Doubtless the General Court in enacting this legislation acted upon the assumption that in the main all taxes for the designated years would be paid without delay by the banks. The statute was designed to be a fair offer on equal terms to all banks. The possibility of favoritism between banks, due to neglect or refusal of some to pay what was assumed to have been treated by all as taxes to be paid, hardly could have occurred to the members of the General Court. No leniency toward those banks which had not promptly paid the tax, as compared with those which had so paid, could have been intended. To adopt the contention of the plaintiff on this point would exonerate those banks delinquent in the payment of their taxes from all liability to make good to the Commonwealth their overdue and unpaid taxes, while giving them most if not all the advantages afforded to the banks which met their tax obligations without delay, and it would offer to the latter no benefit for their prompt payment. In substance it would penalize banks of the latter class. A construction of the statute to that effect would be repugnant to every conception of equal treatment for all under the law. It cannot be supposed that such a result was intended.

The argument of the plaintiff is founded largely on the use of the word "or" in the clause last quoted from the statute. The word "or" is not synonymous with the word "and," is a disjunctive particle in its accurate use, and marks an alternative and not a conjunctive. That is its ordinary significance. But that construction is often discarded in order to effectuate a plain legislative purpose, or to accomplish the intent manifested by the entire act or document. Our decisions illustrate that principle of interpretation. *Gaynor's Case*, 217 Mass. 86, 89, and cases collected. *Thorp* v. *Lund*, 227 Mass. 474, 479. *Marble* v. *Treasurer & Receiver General*, 245 Mass. 504, 508. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 23. *Brine* v. *Cambridge*, 265 Mass. 452, 454. That rule prevails generally. *United States* v. *Fisk*, 3 Wall. 445, 447. *Dumont* v. *United States*, 98 U. S. 142. *Willoughby* v. *Willoughby*, 5 N. H. 244. *Price* v. *Forrest*, 9 Dick. (N. J.) 669, 683. *People* v. *Public Service Commission*, 224 N. Y. 156, 165. *Northern Commercial Co.* v. *United States*, 133 C. C. A. 143.

The result, in our opinion, is that, by filing its waiver under said c. 214, the plaintiff did not acquire the right to be exonerated from collection by the Commonwealth of taxes already assessed against it under G. L. c. 63 but not paid by it. The collection of the tax here in question may proceed under the law, notwithstanding the filing of the waiver. This consequence follows from what seems to us the sound and correct interpretation of said c. 214 in its application to the facts here disclosed.

Since the practical result to the plaintiff would be the same in either event, and since the case has been fully argued, there appears to be no objection to stating the substantive grounds leading to the dismissal of the bill without considering other objections urged by the defendant. *Commonwealth* v. *McNary*, 246 Mass. 46, 48.

*Decree dismissing bill affirmed.*