## STATE EX REL. WILLIAM W. SHENK v. STATE BOARD OF EXAMINERS IN THE BASIC SCIENCES AND OTHERS.[1]

No. 29,158.

March 3, 1933.

[1]Reported in 250 N. W. 353.

2

*William M. Nash, Chester L. Nichols,* and *Ray E. Lane,* for appellant.

*Henry N. Benson,* Attorney General, *James E. Markham,* Deputy Attorney General, and *F. Manley Brist,* for respondents.

*Hallam & Hendricks,* for appellant.

*Harry H. Peterson,* Attorney General, and *F. Manley Brist,* for respondents.

STONE, Justice.

Mandamus, petitioner appealing from an order sustaining a general demurrer to his petition and quashing the alternative writ.

Respondents constitute the state board of examiners in basic sciences, functioning under L. 1927, p. 228, c. 149, 1 Mason Minn. St. 1927, §§ 5705-1 to 5705-23, establishing the board for the purpose, as stated in the title, among other things, of regulating "the practice of healing" as defined in the act. Petitioner is not within the special exceptions made by § 16. He stands on the general exception of § 8, hereinafter construed. If he is so excepted, a peremptory writ should issue, because he made timely application, with tender of the proper license fee, for a license from the basic science board without examination and was refused.

The general scope of the law appears from this partial quotation of the definition in § 1:

"Whenever the term 'practicing healing' or 'practice of healing' is used in this act unless otherwise specifically defined, the same

shall be understood and construed to mean and include any person not hereinafter excepted  \*  \*  \*  who shall in any manner for any fee, gift, compensation or reward or in expectation thereof, engage in, or hold himself out to the public as being engaged in, the practice of medicine or surgery, the practice of osteopathy, the practice of chiropractic, the practice of any legalized method of healing or the diagnosis, analysis, treatment, correction or cure of any disease, injury, defect, deformity, infirmity, ailment or affliction of human beings."

Petitioner does not claim to have been licensed as a naturopath or otherwise when the basic science law took effect. His submission is that he was then lawfully authorized so to practice without a license under 1 Mason Minn. St. 1927, § 5717. We do not stop to inquire into the effect of the amendment by L. 1927, p. 282, c. 188, § 4, effective April 14, 1927, making § 5717 inapplicable to "persons legally authorized to practice healing or excepted from the practice of healing  \*  \*  \*  so long as they confine their activities within the scope of their respective licenses." It is significant that this statute was passed at the same session as the basic science law.

Section 5717 made it unlawful to "practice medicine" without license. Any person is regarded as so practicing who shall "for a fee prescribe, direct or recommend for the use of any person, any drug, or medicine or other agency for the treatment or relief of any wound, fracture, or bodily injury, infirmity or disease."

The argument is that the phrase concerning prescription of "any drug, or medicine or other agency" must be limited by construction; that the word "agency," under the rule *noscitur a sociis*, must be so restricted by the preceding phrase "drug or medicine" as to eliminate all forms of "drugless healing."

Without so deciding, we assume that view correct. Cited in its support are, inter alia, State v. Herring, 70 N. J. L. 34, 56 A. 670, 1 Ann. Cas. 51; State v. Gallagher, 101 Ark. 593, 143 S. W. 98, 38 L.R.A. (N.S.) 328; Bennett v. Ware, 4 Ga. App. 293, 61 S. E. 546; State v. Liffring, 61 Ohio St. 39, 55 N. E. 168, 46 L. R. A. 334, 76

4

A. S. R. 358. There are at least implications to the contrary in Stewart v. Raab, 55 Minn. 20, 56 N. W. 256, and State v. Oredson, 96 Minn. 509, 105 N. W. 188. See also State v. Johnson, 84 Kan. 411, 114 P. 390, 41 L.R.A.(N.S.) 539, and Commonwealth v. Zimmerman, 221 Mass. 184, 108 N. E. 893, Ann. Cas. 1916A, 858. The assumption that petitioner does not practice medicine, as defined by § 5717, brings us to the question whether he is engaged in the practice of healing under the basic science law.

Petitioner himself states that naturopathy "includes and embraces the diagnosis and practice of physiological, mechanical and natural sciences of healing." Treatment "includes the use of foods of such bio-chemical tissue-building products and cell salts as are found in the normal body, and the use of vegetable oils and dehydrated and pulverized fruits, flowers, seeds, barks, herbs, roots, and vegetables uncompounded and used in their natural state," exclusive of those narcotic or poisonous. The petition goes on to say that "diagnosis, as a term used in this definition, aims not merely to ascertain the pathological state of any patient from the manifest symptoms, in any given case, but primarily to discover the causes of weakness, sickness, or disease. It is obvious," as petitioner continues, that in order successfully to treat "any pathological condition its inciting causes must be ascertained and removed. The anatomy and physiology of the human body constitute a universal and common base for all branches of the healing art."

No elaboration is needed of petitioner's characterization of his calling to show that, although supposed beyond reach of § 5717 because not practicing medicine, he is distinctly under the coverage of the basic science law because practicing the art or science of healing as therein defined. Pathology seems almost as important as in medicine. Diagnosis is stressed. That is as it should be. Diagnosis (see State v. Rolph, 140 Minn. 190, 167 N. W. 553, L. R. A. 1918D, 1096) seems necessary to any skilful treatment, with the possible exception of the mental or spiritual sort. Even in that recognized field it ought to be helpful to both healer and patient if either or both can locate the seat of difficulty and so be enabled

knowingly to focus thereon the acknowledged therapeutic power of correct thinking. An object of the basic science law is to require of all healers, other than those expressly excepted, such general knowledge of science in application to human anatomy as measurably to insure some diagnostic skill and, in consequence, some degree of dependability in result and some amount of directive knowledge for the ensuing treatment.

Petitioner's claim is that he is within the general exception of § 8, couched in this language:

"Any person not hereinafter excepted from the provisions of this act who was lawfully authorized to practice healing, as by this act defined, in this state on the date this act takes effect, and who was on that date regularly licensed or registered in the manner then by law provided, shall, upon application as herein provided, receive from the State Board of Examiners in the Basic Sciences a certificate of registration" without examination.

Claiming no previous license or registration, petitioner insists that he was lawfully authorized "to practice healing" when the basic science act took effect. That is not enough. The requirement of § 8 is double, including not only authority of law to practice, but also, and in addition, regular license or registration. This is not a case where the disjunctive "or" can be substituted by construction for the conjunctive "and." Too plain is the legislative purpose to sweep within the law every practitioner of healing, not as previously defined by law, but as defined "by this act." (Compare State v. Oredson, 96 Minn. 509, 105 N. W. 188.) Were we to hold now that the intention was to except those lawfully practicing the art of healing who for any reason were not "licensed or registered," the latter requirement would have to be put aside as surplusage. That would be amendment rather than construction of the statute.

That as a naturopath petitioner was not eligible to registration or license under any law in existence when the basic science act took effect cannot help him. To allow his argument would require an implication not permitted by the plain purpose of the statute and the equally plain language used to express it. Very likely the

6

sweeping language above quoted from § 8 was used, through abundance of caution, to make sure of embracing any and all persons who might have been practicing on the effective date some branch of the art of healing in such manner that, although lawfully so practicing, they were not then within any of the legislative categories such as medicine, osteopathy, and chiropractic already covered by registration statutes. That does not require the impossible of anyone. Nor does it refer to an impossible situation. It does stipulate two conditions for admission to the excepted class—lawful right to practice plus license or registration. In view of the fact that there were those lawfully practicing a healing art without license or registration, the intended scope of the general exception of § 8 is not difficult to delimit.

The argument for petitioner turns back on itself with fatal result, for it puts petitioner squarely within the inclusion of § 1, which embraces not only physicians, surgeons, osteopaths, and chiropractors, but also anyone in "the practice of any legalized method of healing." The use of that broadly inclusive phrase emphasizes that the exclusionary effect of § 8 reaches only those who, on the determinative date, were *both* legally authorized to practice *and* then licensed or registered under existing law.

Inasmuch as on the face of his petition it appears that petitioner is practicing and intends to practice the art or science of healing as defined by the basic science law, and is not within any of the exceptions therefrom, general or special, he is required to submit himself to the examination required.

There is claim for petitioner that the basic science law is unconstitutional because abridging his privileges and denying him due process and equal protection of law. The point is without merit. The law does not ban naturopathy. It does regulate it. We are not interested in the extent to which the medical profession may have sponsored the law nor their motives in doing so. It is enough that, since the days of Hippocrates through those of Galen, Vesalius, and their modern successor anatomists, there has been great progress and splendid accomplishment in their science and

the related arts of diagnosis and treatment. Lawmakers everywhere have taken note and have been doing so for a century or more. They began with laws facilitating the procuring of human bodies for dissection. Thereby doctors and their students were enabled to transfer their patronage from grave robbers, "body snatchers," to legitimate purveyors of cadavers. Other laws, regulatory and otherwise, followed. Finally came the restrictive regulation, through licensing, now familiar law everywhere. The basic science statute is the latest addition thereto. It departs somewhat from the older definition of the practice of medicine. Of its newer and broader category of the practice of healing, naturopaths have no complaint on constitutional grounds.

In State v. Broden, 181 Minn. 341, 232 N. W. 517, we sustained the law against the objections then made based on its exclusions. What was then said is enough to dispose of present objections to its inclusions. Irrelevant on the constitutional point is the objection that petitioner was lawfully authorized to practice naturopathy under former law, and that at common law he might follow any ordinary occupation as an inalienable right. Allgeyer v. Louisiana, 165 U. S. 578, 17 S. Ct. 427, 41 L. ed. 832. Time was when the same argument could have been made for aboriginal witch doctors or medicine men. But not now. We have reached a stage where many occupations are so affected with a public interest that they are subject to regulation by police power. The remaining question is whether the regulation is reasonable. Nothing has been brought to our attention to enable us to override the legislative judgment either as to the reasonableness of its regulation or the classification of the basic science law. Compare People v. Lewis, 233 Mich. 240, 206 N. W. 553, 42 A. L. R. 1337, and the numerous authorities there cited, inter alia, Commonwealth v. Zimmerman, 221 Mass. 184, 108 N. E. 893, Ann. Cas. 1916A, 858. The practice of healing, as much if not more than that of medicine (again postulating some real difference between them) is not attended by any right "not subordinate to the police power of the states." Lambert v. Yellowley, 272 U. S. 581, 596, 47 S. Ct. 210, 214, 71 L. ed. 422, 49 A. L. R.

575. For other cases involving alleged discrimination against various schools or methods of healing, see annotations 16 A. L. R. 709, 37 A. L. R. 680, and 42 A. L. R. 1342.

The order appealed from is affirmed.

*HILTON, Justice,* took no part.

*WILSON, Chief Justice* (dissenting).

Since the majority opinion assumes without deciding that the rule in *noscitur a sociis* results in a construction of the words "or other agency" in 1 Mason Minn. St. 1927, § 5717, as meaning "other agency" of the same general character of drugs or medicines, it follows that it was legal for the relator to practice his profession in Minnesota as a naturopath prior to the enactment of the "basic sciences" act. L. 1927, p. 228, c. 149, 1 Mason Minn. St. 1927, §§ 5705-1 to 5705-23. Relator was within his rights at common law, and there was no statute, prior to the "basic sciences" act, making his conduct criminal.

Section 8 of said act in part provides:

*"Any person * * * who was lawfully authorized to practice healing,* as by this act defined, in this state on the date this act takes effect, *and who was on that date regularly licensed or registered in the manner then by law provided,"* shall be entitled to receive the certificate of registration in the "basic sciences" without an examination.

This is the certificate that the relator now seeks. I have italicized the portions of the quotation which are here important.

I do not agree with the construction placed thereon by the majority opinion, which construes this language as meaning that such person must have two qualifications, viz. (1) He must be lawfully authorized to practice; and (2) he must be "licensed or registered in the manner then by law provided." In my opinion the requirement for a license or registration should be ignored as surplusage since it calls for an impossibility. "The impossibility of doing what the law requires excuses the performance." Coke Litt. 29a.

The point is that relator was lawfully authorized to practice, but he was not licensed nor was he registered. Why not? Simply because there was no law under which he could be registered and no law requiring or providing for a license to be issued to him. This court now construes a statute as valid though it requires an impossibility. The construction of this statute means that the legislature said to the relator and others in his situation: "We will in words provide a way for you to have a certificate without being subjected to the examination under the law which we are now passing, but we will surround that favor to you with impossible restrictions which will prevent you from ever receiving the certificate which we in our language dangle before your eyes like a rainbow."

I do not believe that the legislature ever intended the result of this extremely literal interpretation now given to this statute.

It is pointed out that the word "and" not "or" is used, and the further requirement, the impossible one, is stated.

What support is there for such literal construction producing what I consider an absurd result? Of course the words are there. But that is not all there is to construction. *Qui haeret in litera haeret in cortice.* Our duty is to discover the true intention of the law, its purpose, the object intended, and the policy involved. It is the duty of the court to endeavor to give effect to the intention or purpose of the legislature as expressed in the statute. To ascertain that intent we may look not only to the language but to the subject matter of the act, the object to be accomplished, and the purpose to be subserved. The spirit and intention of the law should prevail.

A statute should be construed, if reasonably possible, so as to render it operative. The intent of a valid statute is the law. We must search for that intent. The real intent of the legislature, when ascertained, will always prevail over the literal sense of the words used in the statute. The reason and spirit of the statute are more important than the letter itself. It is our duty to give effect to the evident meaning of the statute. A statute should be

so construed as to make its application equitable and just instead of inequitable and unjust. Advanced and more stringent requirements for any profession have almost invariably recognized the pioneer already actively and sincerely engaged therein under less strict prerequisite requirements. We may consider the effect and consequences of a proposed construction of a law to ascertain what is probably its true intent.

It seems clear to me that the legislature intended to say to one who was lawfully practicing his occupation, as the relator was, that we will give you a certificate so that you may continue to do as you are now lawfully doing, and the law which we now make will apply to those who hereafter enter into such occupation or profession. Upon the record before us the requirements of the school of naturopathy are very high and must command the respect of all.

Under the construction which the majority opinion gives this statute relator is guilty of a crime. It is a penal statute. See § 17.

But "it is a general rule * * * that penal statutes are to be construed strictly. A criminal offence should not be created by an uncertain and doubtful construction. * * * A statute is ineffectual to make criminal an act otherwise innocent, unless it clearly appears that such act is within the prohibition of the statute, the statute being reasonably construed for the purpose of arriving at the expressed intention of the legislature. It is not enough that the case be within the apparent reason and policy of the statute." 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 2417; State v. De Guile, 160 Minn. 191, 199 N. W. 569.

It is not an uncommon thing for the legislature, in enacting legislation of this character, to make it inapplicable to those already engaged in the practice of the particular profession to be licensed and regulated under a new law. If this man were lawfully allowed to practice naturopathy, how or why would the legislature have concluded not to authorize the issuance to him of the certificate which he now seeks? The legislature clearly intended to have certain persons have these certificates without taking the examination under the "basic sciences" act. No one can doubt

that. But under the construction now given this statute by this court it would be impossible for anybody ever to receive such a certificate. This results from the fact that it was impossible for anybody ever to register or get a license. I am unable to understand how the conclusion can be reached that the legislature did not intend to have any such certificates issued. If that was the intent, why did they do anything about such certificates? In fact this conclusion makes practically all of § 8 a nullity. This section provides that applications must be made for such certificate on or before October 1, 1927; the applicant must furnish detailed information; he must pay a fee. Section 8 provides what shall be recited in the certificate and points out the duties of the state board of examiners under the "basic sciences" act. Now, this court in effect and in practice says that the legislature did not intend to have any such certificates issued at all. I cannot concur in that conclusion.

The legislature said that they would recognize and issue certificates to "any person who was lawfully authorized to practice healing." That would seem to have been sufficient. If he were "lawfully authorized to practice" he would of course have done everything that the law exacted of him. That would have included a license or a registration "in the manner then by law provided." Such language would seem sufficient for all possible purposes. But it is true that the legislature did not stop there. Continuing, it said: "and who was on that date regularly licensed or registered in the manner then by law provided." But the law did not provide for any license or for any registration. It was not possible for relator to get a license. And it was equally impossible for him to register. The law did not require it. The "basic sciences" act directed him to be licensed or registered "in the manner then by law provided." It really seems to me to be the height of absurdity to say that the legislature intended or expected the impossible. Nor do I think the legislature ever intended this statute, penal in its nature, to be so construed. What has become of the language of this court in the De Guile case, 160 Minn. 191, 193, 199 N. W. 569, wherein it is said?

"It is a familiar rule of construction that a statute regulating conduct which is not criminal or wrongful unless it has been made so by the statute is to be strictly construed, and the statute is not to be extended by implication to classes not clearly within its terms. * * * Before conduct hitherto innocent can be adjudged to have been criminal, the legislature must have defined the crime, and the act in question must clearly appear to be within the prohibitions or requirements of the statute."

But that is not all. Upon the construction now given this statute, the first provision, viz. "Any person * * * who was lawfully authorized to practice healing," is useless, and it was indeed written into this statute without purpose or meaning. Just idle words. If "regularly licensed or registered in the manner then by law provided," he would be necessarily authorized to practice. So I say if the second provision is mandatory, the first provision had no place in the law. This follows from the construction now given to the statute. Yet one of the fundamental rules for construction is that we should avoid absurd results.

It would seem much more reasonable to say that this statute means that the certificate was to be issued to any person lawfully authorized to practice healing and who had registered or procured a license if the law required registration or a license.

As above indicated, emphasis is placed upon the use of the word "and" instead of the word "or"; but in order to effectuate the intention of the legislature the word "and" has frequently been construed to mean "or." This is done for the purpose of carrying out the obvious intent of the legislature. I think we ought to say here that the legislature must have intended the desired certificate to be issued to somebody; and that, since there is nothing to indicate any reason why one who is "authorized to practice" should not have such certificate and no reason why one who is "licensed or registered in the manner then by law provided" should not have such certificate, it must be that the legislature intended that the certificate could be issued to one in either classification, and therefore we should construe the word "and" as "or" and thereby effectuate the

legislative intent. This seems to me necessary in order to harmonize the statutory provisions. If it does harmonize them, it is not only permissible but it is our duty so to construe the word "and."

In Kanne v. M. & St. L. Ry. Co. 33 Minn. 419, 23 N. W. 854, 856, the plaintiff sought to recover possession of certain real estate, together with certain damages for withholding the same. The defendant pleaded condemnation proceedings. The statute in relation to the condemnation proceedings contained a clause:

"No proceedings under the law have been instituted, *or* are pending, to ascertain and assess such compensation."

Proceedings had been instituted but were no longer pending, and the court said [33 Minn. 421]:

"The sense of the statute requires that the word 'or,' above italicized, be construed in a conjunctive sense, in accordance with a familiar rule of statutory construction. State v. Brandt, 41 Iowa, 593, 615; Boyles v. McMurphy, 55 Ill. 236; Weston v. Loyhed, 30 Minn. 221, 14 N. W. 892. It could not have been meant, if proceedings had been once instituted and then abandoned or dismissed, or for any reason terminated without effecting a valid condemnation of the property, that the case would thereby be taken out of the statute."

It seems to me that it would be just as reasonable to construe the word "and" in the statute now before us as for the court to construe the word "or" to be "and" in the Kanne case. In my judgment it is our duty so to do.

This rule is not an unusual one and is found in many of the reports, including our own. See Eberle v. Miller, 170 Minn. 207, 212 N. W. 190, and the cases there cited. See also 6 Dunnell, Minn. Dig. (2 ed.) § 8976. The Eberle case also emphasizes the rule that a statute should not be so construed as to produce absurd results.

The well established rule is that "and" may be interpreted to mean "or," and vice versa, where by so doing effect may be given to a statute in harmony with the plain legislative intent as gathered from all the provisions of the enactment. Armstrong v. State, 72

Ind. App. 303, 120 N. E. 717, and cases cited; People ex rel. Fix v. Trustees of Northwestern College, 322 Ill. 120, 152 N. E. 555.

This is permissible in order to effectuate a plain legislative purpose, or to accomplish the intent manifested by the entire act. Central Trust Co. v. Howard, 275 Mass. 153, 175 N. E. 461, and cases cited; U. S. v. Fisk, 3 Wall. 445, 447, 18 L. ed. 243; Dumont v. U. S. 98 U. S. 142, 25 L. ed. 65; 25 R. C. L. p. 977, § 226; Wilcox v. Warren Construction Co. 95 Or. 125, 186 P. 13, 13 A. L. R. 211; Pompano Horse Club, Inc. v. State ex rel. Bryan, 93 Fla. 415, 111 So. 801, 52 A. L. R. 51; State ex rel. Rich v. Steiner, 160 Wis. 175, 151 N. W. 256.

As said in Ayers v. Chicago T. & T. Co. 187 Ill. 42, 56, 58 N. E. 318, 323:

"It is well settled, that the words 'or' and 'and' will not have their literal meaning, when to give them their literal meaning renders the sense of a statutory enactment dubious. Their strict meaning is more readily departed from than that of other words, and one will be read in the place of the other where the meaning of the context requires it."

*LORING, Justice* (dissenting).

I agree with the Chief Justice.

### ON REARGUMENT.

On October 6, 1933, the following opinion was filed:

*STONE, Justice.*

Reargument has convinced us that, principally through error of the writer, we probably misconstrued § 8 of the basic sciences law (L. 1927, p. 228, c. 149). The section is ambiguous in that it first authorizes "any person not hereinafter excepted * * * lawfully authorized to practice healing, as by this act defined, in this state on the date this act takes effect, *and* who was on that date regularly licensed or registered in the manner then by law provided," to registration in the basic sciences without examination. Later in the section (and this was inexcusably ignored in the writing of the

former opinion), the disjunctive "and" is succeeded by the alternative "or." Literally, the latter provisions authorize registration without examination upon furnishing satisfactory evidence that, on the effective date of the act, the applicant was "lawfully authorized to practice healing *or* registered according to law in the particular branch or system of healing by him pursued."

We shall not now attempt, by construction, to remove this conflict of language. The attempt along that line in the former opinion has been made to appear sufficiently doubtful to deprive it of conclusiveness.

We return to the question, heretofore passed by mere negative assumption, whether petitioner as a naturopath was engaged in the practice of medicine within the definition of statute (1 Mason Minn. St. 1927, § 5717) when the basic sciences law took effect. We now decide that he was practicing medicine and that such practice was unlawful. Hence he is not entitled to the benefit of the provisions of § 8 concerning registration without examination.

The practice of medicine as defined by § 5717 includes anyone who shall "for a fee prescribe, direct or recommend for the use of any person, any drug, or medicine or other agency for the treatment or relief of any wound, fracture, or bodily injury, infirmity or disease."

Certainly the essence of naturopathy, sufficiently explained in the first opinion, demonstrates that its practitioners resort to natural remedies such as herbs and other so-called natural methods for the alleviation of the ills of the human body. Any allowable argument to the contrary will still leave unabated the rather obvious conclusion that the methods of the naturopath are, in any event, within the legislative inclusion of "other agency for the treatment, care or relief of any * * * bodily injury, infirmity or disease." Our statute defining the practice of medicine "was not enacted for the benefit of any profession or of any school or theory of medicine. It was designed to secure the public in whole and in every part" against the possibility of mistreatment of their ailments of any kind by any unqualified person. State v. Oredson, 96 Minn. 509,

512, 105 N. W. 188, 189. That purpose is now confirmed and implemented by the basic sciences law and the registration thereby required. There are now schools of healing excepted by statute from the category of practitioners of medicine who otherwise would be included within its broad scope. For example, chiropractors are "declared" by statute not to be engaged in the practice of medicine, surgery, or osteopathy. 1 Mason Minn. St. 1927, § 5731(c). In like manner, osteopaths are put by statute in a distinct category. §§ 5735-5740. Naturopaths have not yet been placed in such a separate classification by statute. In Commonwealth v. Zimmerman, 221 Mass. 184, 188, 108 N. E. 893, 895, Ann. Cas. 1916A, 858, a chiropractor was held engaged in the practice of medicine under a statute which did not except them. "The acts which he did and their manifest design," said the court, "are to be examined rather than the words used, in order to ascertain the true nature of the defendant's conduct." The absence of the use of medicines and surgical operations in the ordinary sense was considered unimportant. The defendant's method of treatment was [221 Mass. 189] "found to have such relation to the cure or prevention of disease or the relief of pain as to constitute the practice of medicine." Naturopathy, as the petitioner himself explains it, has no escape from that conclusion.

For the reason above stated, the result reached in our former decision is adhered to, and the order appealed from stands affirmed.

*DEVANEY, Chief Justice,* and *HILTON, Justice,* took no part on reargument.