PEOPLE *v.* LEWIS.

1. PHYSICIANS AND SURGEONS—LEGISLATURE HAS POWER TO FIX
   QUALIFICATIONS OF DRUGLESS HEALERS.

   It is within legislative power to require persons practic-
   ing treatment of human ailments or diseases without the
   use of drugs to possess knowledge of organic structure,
   intimate structure of tissues, embryonic evolution, func-
   tions of the body, molecular and atomic structure of
   bodies, micro-organisms, science of diseases, morbid proc-
   esses observable in various diseases of organs, recognition
   of disease by its symptoms, science of health, and efforts
   made and measures and precautions deemed advisable for
   the promotion and protection of public health.[1]

2. CONSTITUTIONAL LAW — PHYSICIANS AND SURGEONS — MEDICAL
   PRACTICE ACT CONSTITUTIONAL—CHIROPRACTORS.

   The medical practice act (2 Comp. Laws 1915, § 6724 *et
   seq.*), requiring registration and fixing the qualifications
   of all persons practicing medicine, including drugless
   healers, is not violative of rights guaranteed by the State
   Constitution or the 14th Amendment to the Federal Con-
   stitution because it requires chiropractors to pass an ex-
   amination before a medical board in subjects which no
   school of chiropractic teaches and knowledge of which they
   deem unnecessary.[2]

3. PHYSICIANS AND SURGEONS—MEDICAL PRACTICE ACT—INTENT.

   The courts will not indict the medical profession of design
   to annihilate the system of chiropractic adjustment, and
   the legislature of supinely surrendering the lawmaking
   power in aid thereof, because of the passage of the medical
   practice act requiring chiropractors to pass an examination
   before a medical board in subjects which no school of
   chiropractic teaches, but knowledge of which the legis-
   lature deems necessary by persons practicing treatment
   of human ailments or diseases.[3]

[1]Physicians and Surgeons, 30 Cyc. pp. 1547, 1548; [2]Id., 30 Cyc.
p. 1548; [3]Id., 30 Cyc. p. 1548.

Application of statutes regulating the practice of medicine to
persons giving special kinds of treatment, see notes in 3 L. R.
A. (N. S.) 763; 24 L. R. A. (N. S.) 103; 25 L. R. A. (N. S.)
1297; 33 L. R. A. (N. S.) 179.

4. CRIMINAL LAW—PHYSICIANS AND SURGEONS—PRACTICING WITH-
   OUT A LICENSE.
   In a prosecution for practicing medicine without a cer-
      tificate of registration or license, a graduate of a chiro-
      practic school who undertook to practice his profession
      without registration or license under the medical practice
      act (2 Comp. Laws 1915, § 6724 et seq.) was properly
      convicted.[4]

Exceptions before judgment from Genesee; Black
(Edward D.), J.     Submitted October 15, 1925.
(Docket No. 141.)     Decided December 22, 1925.

Blake D. Lewis was convicted of practicing medicine
without a certificate of registration or license.     Af-
firmed.

*George W. Cook, Neithercut & Neithercut, Farley &
Selby,* and *M. Merle Sheppard,* for appellant.

*Andrew B. Dougherty,* Attorney General, and *Wil-
liam R. Roberts,* Prosecuting Attorney, for the people.

WIEST, J.     Defendant is a graduate of the Palmer
School of Chiropractic.     Without registration or
license he opened an office in the city of Flint, and,
upon examination of a fake patient, an employee in
the city health department, opined she had a floating
kidney and advised that a course of his adjustments,
costing $25, would help her constipation.     For this,
he was charged with and convicted of the crime of
practicing medicine without a certificate of registra-
tion or license.     He prosecutes review on exceptions
before sentence, contending that the medical practice
act (2 Comp. Laws 1915, § 6724 et seq.), requiring
registration and fixing qualifications of all persons
practicing medicine, is unconstitutional, unreasonable,
arbitrary and violates the Fourteenth Amendment to
the Federal Constitution, in the following particulars:

---

[4]Physicians and Surgeons, 30 Cyc. p. 1562 (Anno).
   233—Mich.—16.

"(1) Requires the applicant to pass an examination on medical subjects which have no relation to their school of practice.

"(2) No chiropractic school teaches these subjects and an understanding and knowledge of these medical subjects is unnecessary, and unused in their school of practice.

"(3) That the effect and purpose of these requirements are prohibitive and not regulatory.

"(4) That the evil purpose of the statute was to annihilate and eventually destroy the established school of drugless healers known as chiropractors.

"(5) That the statute of the State of Michigan which requires chiropractors to pass an examination before a board of medical men whose profession is opposed to the system of chiropractic adjustment is arbitrary, prohibitive and unreasonable."

Counsel for defendant insist the statute operates to prohibit chiropractors from obtaining a license, because it requires them to pass an examination before a medical board in subjects which no school of chiropractic teaches, and which are not used by them in the practice of their profession. We take it that defendant desired to practice a system of treatment of human ailments or diseases without the use of drugs. If so, is it unreasonable to require him to pass an examination before a board of qualified experts in the subjects of anatomy, histology, embryology, physiology, chemistry, bacteriology, pathology, diagnosis, hygiene and public health?

It is within legislative power to require persons practicing treatment of human ailments or diseases without the use of drugs to possess knowledge of organic structure, intimate structure of tissues, embryonic evolution, functions of the body, molecular and atomic structure of bodies, micro-organisms, science of diseases, morbid processes observable in various diseases of organs, recognition of disease by its symptoms, science of health, and efforts made and measures and precautions deemed advisable for the promotion

and protection of public health. This power has been exercised and the regulation provided must stand unless violative of rights guaranteed by the State or the Federal Constitution. We find no limitation upon the subject in the State Constitution. We can conceive of no deprivation of the equal protection of the law in requiring drugless healers to understand the subjects mentioned. The fact defendant has not received instruction in some of these subjects offers no objection to the validity of the law. We decline to indict the medical profession of design to annihilate the system of chiropractic adjustment and the legislature of supinely surrendering the law-making power in aid thereof. It may be that no chiropractic school teaches all the subjects mentioned and chiropractors feel that a knowledge thereof is unnecessary and unused in their school of practice, but this affords no reason for requiring the legislature, in recognition thereof, to enact no law not in conformity therewith.

While we think all questions presented fall within the opinions of this court in *Locke* v. *Ionia Circuit Judge,* 184 Mich. 535, and *People* v. *Rose,* 218 Mich. 642, we have examined the points anew and find the great weight of authority against every contention advanced. The cases cited by defendant are clearly distinguishable from or so contrary to our former decisions and the overwhelming weight of authority as to render review thereof unnecessary. Some of the authorities in line with our former decisions we will mention.

In *State* v. *Barnes,* 119 S. C. 213 (112 S. E. 62), it was said:

"The main ground upon which the alleged capricious and unreasonable features of the act are urged is that the chiropractor is required to familiarize himself with certain subjects which have no place in his branch of the healing art, such as anatomy, physiology, hygiene,

toxicology, minor surgery, medical jurisprudence, pediatrics, bacteriology and pathology."

This was well answered:

"Naturally the first step in the remedial process is diagnosis to find out what is the matter with the patient.    To a layman's view, a familiarity with the most, if not all, of the subjects named, is essential to a proper discharge of this initial process, and equally so to the administration of the proposed remedy. Whether they are or not, however, is not a judicial question.    It has been so declared by the legislative authority, based, we must assume, upon *bona fide* scientific grounds, and the requirement does not present such evidence of caprice or unreasonableness as to justify a destruction of a plan devised for the protection of the public."

In *Harvey* v. *State,* 96 Neb. 786 (148 N. W. 924), it was urged that the State:

"May not prohibit the exercise and practice of chiropractic by refusing to provide an examination in the curriculum taught in the best schools and colleges of chiropractic—those branches deemed essential and put in operation by leading chiropractors—and compelling the chiropractor to procure a diploma from a medical college and take an examination in a curriculum of some one of the sects of drug medication."

In ruling against this point the court quoted with approval the following from *Little* v. *State,* 60 Neb. 749 (84 N. W. 248, 51 L. R. A. 717) :

"It is insisted that the statute under consideration is void, because it is prohibitive in its scope and effect. The construction of the act which counsel places upon it we are unwilling to adopt.    The statute undertakes to regulate, and it is not prohibitive in its nature. Any one who has complied with the provisions may practice medicine in this State.    It is prohibitive only as to those who have not been duly licensed by the State board of health to practice the art of healing."

No school may fix a standard of education, and

thereby entitle its graduates to practice any branch of the healing arts, regardless of legislation, and no graduate can of right demand that legislation accord' with only what he has been taught.     The law recognizes chiropractic adjustments or treatments and fixes the standard of knowledge deemed essential to a proper practice thereof.     The legislature took a comprehensive view of the public welfare in regulating the practice of medicine.     This practice is well stated in our former decisions and in *Commonwealth* v. *Zimmerman*, 221 Mass. 184 (108 N. E. 893, Ann. Cas. 1916A, 858).

"Medicine relates to the prevention, cure and alleviation of disease, the repair of injury, or treatment of abnormal or unusual states of the body and their restoration to a healthful condition.     It includes a broad field.     It is not confined to the administering of medicinal substances or the use of surgical or other instruments.     It comprehends 'a knowledge, not only of the functions of the organs of the human body, but also of the diseases to which these organs are subject, and of the laws of health and the modes of living which tend to avert or overcome disease, as well as of the specific methods of treatment that are most effective in promoting cures.'     Knowlton, C. J., in *Commonwealth* v. *Jewelle,* 199 Mass. 558, 560 (85 N. E. 858).     In order to practice medicine one need not cover the entire field of the science.     If he devotes himself to a very restricted part of it, he still may be found to practice medicine."

It was there also stated, and we quote the same with approval, having in mind the testimony given by an expert with reference to terms employed distinguishing analysis and adjustment from that of medical diagnosis and treatment.

"It is of no consequence that the defendant abstained from the use of the words 'diagnosis,' 'treatment,' or 'disease,' in description of what he did, and employed the terms 'analysis,' 'palpation' and 'adjustment.'     The acts which he did and their manifest design are to

be examined rather than the words used, in order to ascertain the true nature of the defendant's conduct. A physical examination of the vertebrae, a decision whether they are in normal position or not, and strong manual pressure upon them with the end of changing the position with reference to each other of those found to be irregular, and thereby relieving pressure upon nerves, may be found to have such relation to the cure or prevention of disease or the relief of pain as to constitute the practice of medicine."

See, also, *Kuechler* v. *Volgmann*, 180 Wis. 238 (192 N. W. 1015, 31 A. L. R. 826).

In *Johnson* v. *State* (Tex. Civ. App.), 267 S. W. 1057, it was urged that the school of the chiropractor is sufficient in all of its requirements to thoroughly prepare the student for this special branch of healing, and the right to have this special branch of healing recognized by law was denied by requiring an examination before a medical board. It was urged:

"The legislature, in the exercise of its police power in regulating the practice of medicine in this State, (1) must not forbid the practice of any particular school of healing, provided it be shown that this school is a recognized school or system of healing; (2) it must provide for an education and examination appropriate to the particular school, and not simply appropriate to and fitted for some other school of healing; (3) it must not discriminate between the different schools in any manner whatsoever."

The court stated:

"In the interest of the public health and the general welfare of the people, the legislature is authorized to prescribe such regulations to be conformed to by persons seeking to enter the practice of medicine as in its judgment will secure, or tend to secure, the people against the consequences of ignorance and incapacity, as well as of deception and fraud, and this without regard to any special system of practice or any established school of medicine. * * * Regardless of the school of medicine or system of practice followed

by the practitioner of medicine in any of these systems, the general welfare of the people demands that such practitioner be able to detect readily the presence of disease, and to treat it in some manner recognized as appropriate for its removal. In order that assurance may be had that the one who treats diseases has this requisite qualification, the State has the undoubted right to prescribe a general preparation to be made by one entering such profession, and also to prescribe that he shall have a knowledge of what the legislature may deem the necessary scientific branches of such profession. * * * The fact that it (the law) requires a broader education than is given by the chiropractic college to meet these conditions cannot be urged as a discrimination against such schools of medicine."

In *State* v. *Smith*, 233 Mo. 242 (135 S. W. 465, 33 L. R. A. [N. S.] 179), chiropractic treatment was explained, and the court stated:

"Yet, notwithstanding all this, the practice does involve skill, knowledge of anatomy, diagnosis, and physical treatment," and

"When the defendant says that he does not 'treat,' but 'adjusts,' and that he deals not with the 'disease,' but 'with the cause,' he is merely juggling with words. Changing the name does not change the thing."

The Michigan medical practice act does not undertake to prescribe treatment or limit the practice of medicine to any school.

"All it says is that he (the practitioner) must have a knowledge of certain given subjects before he shall undertake to practice. If the defendant desires to treat those who are sick, let him demonstrate he has a knowledge of the subjects named in the law, and he can treat disease in the manner that is by him deemed best." *Germany* v. *State*, 62 Tex. Cr. App. 276 (137 S. W. 130).

In *State* v. *Heath*, 125 Iowa, 585 (101 N. W. 429), it was said:

"The power of the State to prescribe such restrictions and regulations in the practice of medicine as, in the judgment of the legislature, shall protect the people from the consequences of ignorance or incapacity, as well as deception and fraud, has been vindicated too often to require citation of authority. * * * The statutes do not attempt to discriminate between different schools of medicine or systems for the cure of disease. No method of attempting to heal the sick, however occult, is prohibited. All that the law exacts is that, whatever the system, the practitioner shall be possessed of a certificate from the State board of medical examiners, and shall exercise such reasonable skill and care as are usually possessed by practitioners in good standing of that system in the vicinity where they practice. This excludes no one from the profession, but requires all to attain reasonable proficiency in certain subjects essential to the appreciation of physical conditions to be affected by treatment. The object is not to make any particular mode of effecting a cure unlawful, but simply to protect the community from the evils of empiricism. * * * Section 2576 of the Code requires all, regardless of the particular school, to be examined in anatomy, physiology, general chemistry, pathology, surgery, and obstetrics. Surely it is not unreasonable to exact for every one who proposes to undertake to prevent, cure, or alleviate disease and pain some knowledge of the nature of disease, its origin, its anatomical and physiological features, its causative relations, and of the preparation and action of drugs. At any rate, the State, in order to guard the people against the effects of imposition or ignorance, had the right to exact such knowledge."

See, also, *State* v. *Morrison* (W. Va.), 127 S. E. 75; *Thompson* v. *State*, 19 Ala. App. 328 (97 South. 258); *Wideman* v. *State* (Ala. App.), 104 South. 438; *Dent* v. *West Virginia*, 129 U. S. 114 (9 Sup. Ct. 231); *Reetz* v. *Michigan*, 188 U. S. 505 (23 Sup. Ct. 390).

What we have said is not in disparagement of drugless healing. We decide only the legal questions presented and leave the policy of the law, within

legitimate limits, to the legislative power.    We find no reversible error.

Conviction affirmed and judgment advised.

. McDONALD, C. J., and CLARK, SHARPE, STEERE, and FELLOWS, JJ., concurred.    BIRD and MOORE, JJ., concurred in the result.