## STATE v. A. H. BRODEN.[1]

October 10, 1930.

No. 28,074.

[1]Reported in 232 N. W. 517.

*Jenswold, Jenswold & Dahle,* for defendant.

*Henry N. Benson,* Attorney General, *James E. Markham,* Deputy Attorney General, *Mason M. Forbes,* County Attorney, and *F. Manley Brist* (counsel for board of medical examiners), for the state.

HOLT, J.

Defendant's demurrer to an information charging him with a violation of L. 1927, p. 228, c. 149, 1 Mason, 1927, §§ 5705-1 to 5705-23, inclusive, the basic science act, was overruled with a certificate that the question raised, the constitutionality of the law, was important and doubtful.

No other parts of the constitution are invoked against the statute than §§ 33 and 34 of art. 4. It is difficult to see in these constitutional prohibitions anything intended to touch said c. 149. The law deals with a subject which concededly is within legislative regulation and control by virtue of the police power of the state. The statute is not special legislation but general, for it embraces the whole state and operates upon all persons residing therein who undertake to alleviate or cure bodily ills or injuries. Therefore it does not fall within the prohibition contained in the first sentence of § 33, art. 4; and the only clause in the specific subjects withdrawn by the rest of the section from special legislation which might be claimed applicable is: "granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever." C. 149 does not grant or give anything; it restricts or regulates a vocation.

In State ex rel. Bd. of C. & C. H. Commrs. v. Cooley, 56 Minn. 540, 58 N. W. 150, it was held that the specific subjects upon which § 33, art. 4, prohibited special legislation were but an enlargement of those covered by the first sentence thereof. Michigan has essentially the same constitutional prohibition as contained in the first sentence of said § 33, and it was there held, as against the same argument here advanced touching a statute similar to L. 1927, p. 228, c. 149, that there was nothing in the constitution of that state upon which to question the law; but the court considered whether or not the fourteenth amendment to the federal constitution was contra-

vened and decided that it was not. People v. Lewis, 233 Mich. 240, 206 N. W. 553, 42 A. L. R. 1337. However, inasmuch as the ground of attack upon the constitutionality of said c. 149 is predicated upon the exceptions contained therein, the claim being made that they are arbitrary, unreasonable, and not uniform in application to the groups classified, can be and have been made because of the alleged contravention of the fourteenth amendment in the federal constitution, which in substance is the same as the protection assured by §§ 2 and 7 of art. 1 of the state constitution, we have considered whether the arguments of appellant have shown any reason for holding that this law contravenes any constitutional provision.

It may be conceded that any law, general or special, which classifies groups or individuals either brought within or excepted from its operation, cannot stand where the classification is arbitrary, unreasonable, or does not operate uniformly, or is in fact what is termed class legislation. The first objection raised, and perhaps the one most relied on, is that those who were duly licensed to practice as healers of human ills on May 1, 1927, the time this law went into effect, are excepted from examination in the basic sciences enumerated in the law. It is said, if knowledge of such sciences is essential to those who were to begin practice on May 1, 1927, it was just as essential to those who on or before that date were duly licensed to practice. The law makes no distinction between those who have held the license for a day or so and those who have practiced under a license for years. There can be no doubt of the right of the legislature to raise the standard of knowledge required of those who undertake to cure injuries or ailments of the human body. In so doing it is but reasonable that a line be drawn, so that those already engaged in the practice be not arbitrarily excluded or required to enter upon the study of new subjects of learning or take examinations therein. Those who held license as physicians on May 1, 1927, under whatever school, had passed examination and had been found worthy to practice under the standards required before that date, and there is not much weight to the contention that the public health will be seriously jeopardized if they

continue to practice without taking an examination in the basic sciences; but at the same time the right of the legislature to raise the standard of knowledge for those who aim to practice the art of healing in the future must be fully recognized. Some legislative bodies have made the line of demarcation between the old and new standard a certain number of years of practice. And this has been held valid, although where a fixed number of years is made the dividing line there is room for the argument that there is an arbitrary classification in excluding the one who has practiced a day or week short of the fixed period. It would seem the fact of having taken the examination required by the law at the time the license to practice was issued is less subject to the charge of arbitrariness or unreasonableness than fixing the line of demarcation upon a certain period of practice. No one can legitimately object to laws raising the standard of knowledge which might aid in the treatment of human ills by those engaged in that calling; but everyone should recognize that the method pursued to attain this end should not unnecessarily or harshly disturb those already lawfully engaged therein.

The following decisions indicate, rather satisfactorily, that L. 1927, p. 228, c. 149, is neither arbitrary nor unreasonable in the respect of treating those already licensed as compared with those to be licensed after May 1, 1927. Minnesota State Pharmaceutical Assn. v. State Board of Pharmacy, 103 Minn. 21, 114 N. W. 245; Dent v. West Virginia, 129 U. S. 114, 9 S. Ct. 231, 32 L. ed. 623; Watson v. Maryland, 218 U. S. 173, 30 S. Ct. 644, 54 L. ed. 987; People v. Witte, 315 Ill. 282, 146 N. E. 178, 37 A. L. R. 672; Louisiana State Board of Medical Examiners v. Fife, 162 La. 681, 111 So. 58, 54 A. L. R. 594, affirmed in 274 U. S. 720, 47 S. Ct. 590, 71 L. ed. 1324.

As decisive in his favor appellant cites State v. Luscher, 157 Minn. 192, 195 N. W. 914. The law there involved [L. 1919, p. 411, c. 386] related to the practice of dentistry and contained various provisions defining misconduct for which a license could be revoked, and then § 8 thereof read:

"Provided that the provisions of this act shall not apply to persons lawfully engaged in the business or practices of dentistry at the present time."

To save the law from constitutional objections it was contended that § 8 should be construed so as to mean merely that those already in practice should not·be required to obtain license, and that it did not mean that they were exempted from the provisions defining misconduct or the consequences thereof; but this court held the section not susceptible of such construction and declared the whole act void as contravening the equality clauses of the state and federal constitutions. It was not held that those already licensed could not properly be excepted from examination in additional subjects of scientific knowledge deemed essential for those subsequently licensed. In re Humphrey, 178 Minn. 331, 227 N. W. 179, is also relied on; but the law there relating to the admission to practice law was clearly one denominated special legislation intended to grant a small class the special privilege to be admitted to practice without examination, and where the classification was held arbitrary.

The contention is also that the law runs counter to the constitutional provisions referred to by the arbitrary and unreasonable classification of the groups excepted from· an examination in the basic sciences by § 16 thereof, viz. nurses, midwives, dentists, optometrists, chiropodists, barbers, cosmeticians, etc. The ones just named, under other pertinent statutes, have to be examined in their respective vocations and found competent before engaging therein. Each occupation comes in contact with the human body and may affect its well-being. But none of them relates to what is generally understood as taking charge of persons afflicted with disease or bodily injury to effect a cure, if we except dentists. But it is to be assumed that the legislature when making the exception had in mind that the dentists as well as the other excepted classes had acquired before they could pass the examination as much knowledge of the basic sciences as was necessary in their particular line of work.

346

With the wisdom of legislative classification courts are not concerned. It is enough if there be a reasonable basis for the classification, whether the classification is as to those covered by the statute or to those excepted from its provisions. In laws of this sort all evils cannot be reached at once, nor every desirable object gained in one legislative session. A regulatory law intended to benefit the health of working women by fixing the hours of labor was assailed because of its exceptions as arbitrary and discriminatory and therefore violative of the constitutional provisions in Miller v. Wilson, 236 U. S. 373, 35 S. Ct. 342, 344, 59 L. ed. 628, L. R. A. 1915F, 829, but the court sustained it. In the opinion written by the present chief justice, it was said [236 U. S. 383]:

"The contention as to the various omissions which are noted in the objections here urged ignores the well-established principle that the legislature is not bound, in order to support the constitutional validity of its regulation, to extend it to all cases which it might reach. Dealing with practical exigencies, the legislature may be guided by experience. Patsone v. Pennsylvania, 232 U. S. 138, 144, 34 S. Ct. 281, 58 L. ed. 539, 543. It is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed clearest. As has been said, it may 'proceed cautiously, step by step' and 'if an evil is specially experienced in a particular branch of business' it is not necessary that the prohibition 'should be couched in all-embracing terms.' Carroll v. Greenwich Ins. Co. 199 U. S. 401, 411, 26 S. Ct. 66, 50 L. ed. 246, 250. If the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied."

The reason is obvious for excepting from the examination Christian Scientists and those attempting to cure exclusively by spiritual or mental means. One other class excepted should be noted, viz. [§ 16]:

"Nor shall this Act apply to scientific, sanitary, or teaching personnel employed by the State University, the State Department of

Education, or by any public or private school, college or other bona fide educational institution, or the State Department of Health, whose duties are entirely of a public health or educational character while engaged in such duties."

It seems to us the last five words quoted adequately demonstrate the exception to be reasonable and appropriate and refute the arguments to the contrary made by appellant.

In our opinion L. 1927, p. 228, c. 149, does not violate either state or federal constitution.

The question certified is answered in the negative.

