## STATE v. VIVI ANN MIELKE, ALSO KNOWN AS VIVI ANN WYNTOR.[1]

February 4, 1938.

No. 31,501.

*William S. Ervin,* Attorney General, *Roy C. Frank,* Assistant Attorney General, *M. F. Kinkead,* County Attorney, and *James F. Lynch,* Assistant County Attorney, for the State.

*George H. Lommen,* for defendant.

LORING, JUSTICE.

The trial court has certified to this court the question: "Does the amended information as filed charge a public offense under the Basic Science Act of the State of Minnesota as set out in Section 5705, Mason's Minnesota Statutes for the year 1927?" The amended information charges the defendant with practicing healing as defined by law without a valid existing certificate of registration in the basic sciences. As amended, the information charges the defendant with advertising herself as an assistant and staff lecturer for Dr. R. A. Richardson of Kansas City, and that she would give free daily lectures commencing April 13, 1937, to and including April 15 of that year; that she gave the lectures at the Lowry Hotel

[1]Reported in 277 N. W. 420.

in St. Paul and during the lectures solicited women present to attend a lecture course which would follow immediately, for which a fee was charged; that a number of women attended and paid the fee, and during the lectures certain products or concoctions were described and their uses and values discussed and certain circulars were distributed by and under the direction of the defendant, which circulars further described such products; that during the lectures it was announced that she had such products for sale, and she suggested and recommended their purchase by her hearers, who actually bought them from her at the Lowry Hotel; that from these sales she derived a commission of 55 per cent, the remainder going to Dr. Richardson, who was an osteopath holding no license to practice healing in the state of Minnesota; that one of the paragraphs in the circulars distributed by her was entitled: "How to Improve Your Health and Personal Appearance," and that it stated further:

"An anemia condition of the blood may mean either a deficiency of the blood itself or a deficiency of its red corpuscles.

"Recent scientific discoveries have proved the effectiveness of powdered bone marrow and spleen in the symptomatic treatment of anemia. This treatment offers greater promise of success than previous treatments, and it is endorsed by physicians.

"The effect of red bone marrow and spleen is shown in several ways. It has been found that these substances increase the formation of red blood corpuscles and their hemoglobin content. They also serve as an increased resistance to the process of hemolysis. By this process the hemoglobin or iron content of the blood is separated from the corpuscles and appears in the blood serum. Red bone marrow and spleen has a tendency to make the blood coagulate more quickly, and in this connection it has been used very effectively in the treatment of abnormally profuse menstruation."

She offered for sale tablets claimed to contain red bone marrow and spleen and labeled: "Useful in Secondary Anemia." Circulars which she distributed contained the following paragraphs:

"Women may become excessively fat or unusually thin, or have other physical disturbances. For instance, the young woman whose female organs are not functioning properly, and whose menstrual periods are irregular, practically always has a deficiency of glandular secretions. The thyroid gland, as well as the ovarian glands, is practically always involved.

"The reason we feel so certain that both the thyroid and ovarian glands are concerned is because when thyroid and ovarian substances are supplied, the condition invariably improves. Not only does the patient feel better, but she is more active, more alive and alert, and her complex, the light in her eyes, and the cheerfulness of her expression, all prove that the very thing she needed was glandular food, or female hormones."

Defendant is also charged with having sold female hormone tablets in connection with the lecture.

The basic science law, 1 Mason Minn. St. 1927, § 5705-1, *et seq.* forbids the practice of healing without first having obtained a certificate of having passed an examination by the state board of examiners in the basic sciences. By the terms of the act, the basic sciences are defined to include the following: anatomy, physiology, pathology, bacteriology, hygiene, and chemistry, insofar as the same relate to the human system or mind as generally treated in each or all of said subjects. The practice of healing is defined by the act as including any persons who shall in any manner for fee, gift, compensation, or reward, or in expectation thereof, engage in the diagnosis, analysis, treatment, correction, or cure of any disease, injury, defect, deformity, infirmity, ailment, or affliction of human beings or who for any fee suggests, recommends, or prescribes any medicine or cure thereof.

The defendant does not attack the constitutionality of the basic science law, but asserts that as it applies to her or to the acts charged against her it infringes upon her constitutional rights and that there is no relation between the requirements of the basic science law and the protection of the public as applied to her situation.

With the defendant's contention we cannot agree. It is essential to the public health and safety that persons who, for compensation, are suggesting, recommending, or prescribing medicine or treatment for the correction or cure of human ailments have a basic understanding of the subjects required by the basic science law. In our opinion, it is within the police power of the state so to require. According to the information lodged against her, the defendant induced women to come to lectures for which she charged a fee, and for those who had menstrual troubles she suggested and recommended tablets which she had for sale for correction and cure of their affliction. It is our view that her conduct came squarely within the basic science law and that the requirements of that law are germane to the safety and health of the public in the treatment of such ailments as those for which she sold and recommended her tablets and medicines. Such being the case, no constitutional right of the defendant is infringed upon.

It is our opinion that the question certified to us by the trial court should be answered in the affirmative and that the court properly overruled the demurrer to the information.