STROUD *v.* CROW.

4-5746 136 S. W. 2d 1025

Opinion delivered January 15, 1940.

 

*Peter A. Deisch,* for appellant.

*E. R. Parham* and *W. R. Donham,* for appellee.

McHANEY, J. Appellants are the executive board of the Arkansas Medical Society. Appellees are the members of the State Board of Chiropractic Examiners, except that appellees, M. L. Evans, and C. R. Ernest, are individuals engaged in the chiropractic practice in the city of Little Rock. Appellants brought this action against appellees, in their official capacity, and also as individual medical practitioners duly licensed and practicing under the laws of Arkansas, and for the benefit of all others similarly situated to enjoin the appellees, members of the State Board of Chiropractic Examiners and their successors in office, from issuing licenses or permitting applicants for license to take examinations before said board until a basic sciences certificate is first presented, as, it is alleged, is required by act 147 of 1929, and to enjoin said Evans and Ernest from continuing the practice of chiropractic in this state under authority of licenses issued to them, which were issued after the enactment of said act 147 and without complying with its terms. Appellees defended the action on the grounds of a general denial of the allegations of the complaint; that the Basic Sciences Act is not applicable to the practice, or the licensing to practice, of the chiropractic art; that in so far as it attempts to regulate the licensing or practice of chiropractic it is unconstitutional and void under both the state and federal constitutions, in that the subjects in which an examination is required by said act are not requisite, necessary nor connected with such practice, thereby constituting an unreasonable and unconstitutional interference with the right to practice chiropractic.

Trial resulted in a decree dismissing appellants' complaint for want of equity and they have appealed.

There has long been in this state a State Board of Chiropractic Examiners. Such a board was created by

act 126 of the acts of 1915, p. 485.[1] By § 4 of this act, said board was required to examine applicants in the following subjects: "Chiropractic—anatomy, physiology, symptomotology, chemistry, hygiene, chiropractic principles and diagnosis." In 1921, by act 485,[2] the legislature amended said act 126 of 1915 in certain respects and among others added that an applicant for examination should possess certain educational requirements and must be a graduate of a reputable college of chiropractic, having a "resident" course of not less than three years, in the subjects listed above. Section 2 of this amendatory act gave the board the power to revoke the license of any practitioner in this state for "prescribing any form of medical treatment without having first complied with the law governing the practice of medicine, or any method which is not chiropractic."

The legislature of 1929 enacted act 147, p. 731,[3] the short title of which is the Basic Sciences Act of 1929. Sections 1 and 2 of said act are as follows:

Section 1. "No person shall be eligible for examination or permitted to take an examination for a license to practice the healing art, or any branch thereof, or granted any such license, unless he has presented to the licensing board, or officer empowered to issue such a license, a certificate of ability in anatomy, physiology, chemistry, bacteriology and pathology (hereinafter referred to as the basic sciences) issued by the state board of examiners in the basic sciences." Section 2. "For the purpose of this act, any license authorizing the licentiate to offer or undertake to diagnose, treat, operate on, or prescribe for any human pain, injury, disease, deformity or physical or mental condition is a license to practice the healing art."

Thus is will be seen that the Basic Sciences Act requires an examination before the board therein created in five subjects, called the "Basic Sciences," two of which, bacteriology and pathology, are not mentioned in

[1] Pope's Dig., §§ 10771 to 10776.
[2] Pope's Dig., §§ 10776 to 10784.
[3] Pope's Dig., §§ 10795 to 10814.

the subjects required by the above mentioned chiropractic acts. By § 19[4] of said act it is provided that: "No provision of this act shall be construed as repealing any statutory provision in force at the time of its passage with reference to the requirements governing the issuing of licenses to practice the healing art or any such branch thereof; but any board authorized to issue licenses to practice the healing art or any branch thereof may, in its discretion, accept certificates issued by the Board of Examiners in the Basic Sciences in lieu of examining applicants in such sciences or may continue to examine applicants in such sciences as heretofore. The unconstitutionality of any part of this act shall not be construed as invalidating any other part thereof." Section 18 provides that the act shall not apply to "dentists, nurses, midwives, optometrists, chiropodists, barbers, cosmeticians or christian scientists, practicing within the limits of their respective callings." Certain others are excepted from the provisions of the act, including those then licensed to practice the healing art or any branch thereof. (Corresponding sections of Pope's Digest to the sections of the acts above mentioned will be inserted by the reporter in a footnote.)

The trial court made no specific findings, but simply dismissed the complaint for want of equity. To sustain the decree, appellees say that, in the practice of chiropractic in Arkansas, "such subjects as bacteriology and pathology were not essential to, were not permitted and were not related to or connected with that practice." And that the testimony of certain chiropractic practitioners showed conclusively that such practice in Arkansas "consisted solely in locating the nerve pressure of the spinal column and making proper adjustments to relieve that pressure and nothing else." It is also said that the evidence shows that such a practitioner does not "attempt or purport to diagnose any disease, to treat any disease, or to engage in any method which would in the remotest degree be connected with or concerned with the subjects of bacteriology and pathology." Bacteriol-

---

4 Pope's Dig., § 10813.

ogy is defined by Webster as "The science which deals with the study of bacteria. It is a branch of botany, but some of its most important practical relations are with hygiene, medicine and agriculture." Pathology is defined as "The science treating of diseases, their essential nature, causes and development, and the structural and functional changes produced by them." The legislature thought it proper that all persons seeking license to practice the healing art should have a knowledge of these subjects, and we cannot say their inclusion as to chiropractic was unreasonable, arbitrary and without any relation to such practice. Certainly bacteriology has some relation to such practice, since "some of its most important practical relations are with hygiene," a subject upon which such a practitioner must take an examination under the chiropractic acts of 1915 as amended by the act of 1921, above mentioned. It is said that a chiropractor does not treat diseases, and therefore, pathology has no relation. If he does not treat diseases, what does he treat? Does he manipulate the vertebrae of a well person just for the pleasure of such well person? There would be no excuse for any regulatory chiropractic laws, if they were not engaged in treating disease. In a case cited and relied on by appellees, *State v. Gallagher,* 101 Ark. 593, 143 S. W. 98, 38 L. R. A., N. S., 328, a case decided in 1912, before the first regulatory act on the subject, this court recognized at that time that such practice was the treatment of disease. The court said: "The practice of chiropractics, as defined, understood and used in the treatment of ailments of the body, is not included in the definition of the practice of medicine in said statute, and not limited by it to those only who have procured certificates in accordance with said act." The "treatment of ailments of the body" is necessarily the treatment of diseases. The Basic Sciences Act uses the words "treat—any human pain, injury, disease," § 2, and we are, therefore, of the opinion that said act applies to appellees and that persons practicing chiropractic are engaged in the practice of the healing art, as defined in said act, and that applicants for license

must take the examination before the Basic Sciences Board of Examiners, before they are eligible for examination before the chiropractic board. As said by Mr. Justice STONE of the Supreme Court of Minnesota, in the case of *State, ex rel. Shenk* v. *State Board of Examiners in the Basic Sciences, et al.*, 189 Minn. 1, 250 N. W. 353: "Too plain is the legislative purpose to sweep within the law every practitioner of healing, not as previously defined by law, but as defined 'by this act'."

The Basic Sciences Act of 1929 does not repeal, amend or modify any pre-existing law relating to examination of applicants to practice the healing art, but is an additional requirement, a prerequisite to be complied with before taking such examinations. These laws remain in full force and effect, but with the super-imposed requirements of said act.

Nor can we agree with appellees that the Basic Sciences Act of 1929 is unconstitutional. We again quote from Judge STONE in the Minnesota case, *supra*, the following: "There is claim for petitioner that the basic science law is unconstitutional because abridging his privileges and denying him due process and equal protection of the law. The point is without merit. . . . The law does not ban naturopathy. It does regulate it. We are not interested in the extent to which the medical profession may have sponsored the law, nor their motive in doing so. It is enough that, since the days of Hippocrates, through those of Galen, Vesalius and their modern successor anatomists, there has been great progress and splendid accomplishment in their science, and the related arts of diagnosis and treatment. Lawmakers everywhere have taken note and have been doing so for a century or more. They began by laws facilitating the procuring of human bodies for dissection. Thereby doctors and their students were enabled to transfer their patronage from grave robbers, 'body snatchers,' to legitimate purveyors of cadavers. Other laws, regulatory and otherwise followed. Finally came the restrictive regulation, through licensing, now familiar everywhere.

The basic science statute is the latest addition thereto. It departs somewhat from the older definition of the practice of medicine. Of its newer and broader category of the practice of healing, naturopaths have no complaint on constitutional grounds. . . . Nothing has been brought to our attention to enable us to override the legislative judgment either as to the reasonableness of its regulation or the classification of the basic sciences."

What was said in that case applies with more force here because of the difference between a naturopath and a chiropractor. Nor can we say that because dentists and others are excepted from the provisions of the act, the legislature made an arbitrary classification of those to whom it applies and excluded others of the same class. Acts of the legislature are presumed to be valid, and they will not be stricken down unless contrary to some express or necessarily implied provision of the constitution.

We, therefore, hold that the learned trial court erred in dismissing the complaint. The judgment will be reversed and the cause remanded with directions to grant the relief prayed.