[No. 28727. Department One. October 29, 1942.]

NORMAN J. ELLESTAD, *Appellant,* v. THOMAS A. SWAYZE, *as Director of Licenses, Respondent.*[1]

[1]Reported in 130 P. (2d) 349.

*Henry, Henry & Pierce,* for appellant.

*The Attorney General* and *John E. Belcher, Assistant,* for respondent.

*Laube & Laughlin* and *Patrick A. Geraghty, amici curiae.*

STEINERT, J.—This action was instituted under the declaratory judgment act to test the constitutionality of chapter 183, Laws of 1927, p. 219 (Rem. Rev. Stat., §§ 10185-1 to 10185-8 [P. C. §§ 3726-11 to 3726-18], inclusive), commonly known as the "basic science law." Plaintiff alleged that the act is unconstitutional and therefore void because it violates the due process and equal protection clauses of the fourteenth amendment to the United States constitution and Art. I, § 3, of the Washington constitution and, further, because it is discriminatory in its operation, constitutes class legislation, and is arbitrary and unreasonable. The defendant joined issue by answer, but upon the trial interposed an oral motion for dismissal of the complaint on

the ground that it did not state facts sufficient to constitute a cause of action. The court granted the motion and thereafter entered judgment of dismissal. The plaintiff has appealed.

Appellant, Norman J. Ellestad, is a graduate of the Palmer School of Chiropractic, of Davenport, Iowa, and holds a diploma, dated April 28, 1936, evidencing such graduation. In 1937, he obtained a license to practice chiropractic in the state of Nevada. That license has been renewed annually and is now in force. For some time prior to the commencement of this action, however, he has been a resident of the state of Washington and has recently made application to the director of licenses, respondent herein, for a license to practice chiropractic in this state. He requested that the license be issued to him without examination, on the basis of Rem. Rev. Stat., § 10108 [P. C. § 636n], alleged to be a reciprocity statute. The director refused to issue the license until appellant should have taken and passed the examination provided for in the basic science law. Appellant thereupon instituted this action.

In his complaint he prayed (1) that chapter 183, Laws of 1927, p. 219 (Rem. Rev. Stat., § 10185-1 [P. C. § 3726-11] et seq.), the basic science law, be declared unconstitutional in so far as it operates as a bar to the issuance of the requested license to him; (2) that he be relieved of the necessity of taking a basic science examination as a condition precedent to the issuance of such license; and (3) that he be deemed qualified to receive a reciprocity license to practice chiropractic in this state, based on his license to so practice in the state of Nevada.

Departing somewhat from his complaint, appellant does not, in his brief, assign any error or advance any argument upon the question of his right to

receive a license on a purely reciprocity basis, but confines himself solely to the constitutional question. The specific question thus presented for our decision may be stated as follows: Does the requirement of an examination in the basic sciences of anatomy, physiology, chemistry, pathology, and hygiene, as applied to one seeking a license to practice chiropractic, deprive such person of due process of law or of the equal protection of the laws, in violation of the fourteenth amendment to the Federal constitution and of Art. I, § 3, of the state constitution?

The legislature of this state has long recognized various methods of healing and the distinctions between them, and has provided separate and distinct licenses for the practice of the various systems pertaining to the healing art. In 1919, a series of legislative acts was passed regulating the practice of these several systems. Chapter 4, Laws of 1919, p. 4, relates to osteopathy, and to osteopathy and surgery. Chapter 5, p. 18, regulates the practice of chiropractic. Chapter 36, p. 64, governs the practice of drugless therapeutics. Chapter 134, p. 372, pertains to the practice of medicine and surgery.

The basic science law with which we are here particularly concerned was adopted in 1927 (chapter 183, Laws of 1927, p. 219), and is now codified as Rem. Rev. Stat., §§ 10185-1 to 10185-8 [P. C. §§ 3726-11 to 3726-18], inclusive. The first section of that act provides for the appointment by the governor of an examining committee of five members, learned respectively in the sciences of anatomy, physiology, chemistry, pathology, and hygiene, to conduct examinations of all persons applying for licenses or certificates to practice medicine and surgery, osteopathy, osteopathy and surgery, chiropractic, or drugless therapeutics in the state of Washington as required by law. Section 2 makes it

the duty of the examining committee to conduct examinations in the sciences above named at least twice in each year, at such times and places as the examining committee and director of licenses may determine. Section 3 prescribes that the examinations be written and be of such a nature as to constitute an adequate test as to whether the person so examined has such knowledge of the elementary principles of such sciences as taught by the University of Washington and Washington State College, in one year's instruction of thirty-six weeks, or as taught in one year's instruction of thirty-six weeks at any college or university accredited by the University of Washington, or the equivalent thereof. Section 4, against which appellant's attack is particularly directed, provides as follows:

"Any person desiring to apply to the director of licenses for a license to practice medicine and surgery, osteopathy, osteopathy and surgery, chiropractic, or drugless therapeutics shall first present to the director of licenses his credentials provided by law evidencing his qualifications to be admitted to license or to take the examination prerequisite to securing of such certificate or license and if the same are found satisfactory and the applicant is eligible to such examination, the said director of licenses shall issue to such applicant a certificate giving the name of such applicant and certifying that such applicant is entitled to take the preliminary examination provided for in this act, but without specifying the branch of therapeutics for which said applicant has applied for a license, and upon presentation of such certificate to said examining committee, together with an examining fee of ten dollars, said applicant shall be entitled to take the examination provided for in section three hereof [§ 10185-3]. . . ."

It will thus be observed that the act here in question requires, as a prerequisite to qualification for any of the special licenses under the laws above mentioned, one general examination of the applicant, testing his

knowledge of the elementary principles of anatomy, physiology, chemistry, pathology, and hygiene.

The question submitted for our decision here has been squarely presented and decided by this court in *State v. Wehinger*, 182 Wash. 360, 47 P. (2d) 35. In that case, the defendant, a graduate of the Palmer School of Chiropractic, had been charged in justice court with the crime of illegal practice of chiropractic. On conviction in that court, he appealed to the superior court, where he was tried on an agreed statement of facts. It was therein stipulated that the defendant had advertised himself to be a chiropractor without first having taken the examination prescribed by the act governing the practice of chiropractic (Rem. Rev. Stat., §§ 10098 to 10108 [P. C. §§ 636c to 636n], inclusive), and, further, that he would not have been permitted to take an examination as chiropractor until he had first taken an examination in the basic sciences, as prescribed by the basic science law. From a conviction in the superior court, the defendant appealed to this court. In affirming the judgment of conviction, we said:

"This court, in common with most courts in the union, has sustained legislation regulating the practice of medicine and surgery and the so-called other healing arts and drugless healing. All such acts for the regulation of medicine, surgery, and chiropractic, have been sustained here and elsewhere as a valid exercise of the police power and not violative of any constitutional provision. [Citing cases.]

"In *People v. Lewis*, 233 Mich. 240, 206 N. W. 553, 42 A. L. R. 1337, the Michigan supreme court upheld an act regulating the practice of the system of chiropractic and held that one desiring to practice that system is not deprived of the equal protection of the laws by requiring him, as a condition for securing a license, to pass an examination in anatomy, histology, embryology, physiology, chemistry, bacteriology, pathology, diagnosis, hygiene and public health. It will be ob-

served that act contained more subjects in which a chiropractor is required to be reasonably proficient than our basic science law. This law was upheld, despite the fact that it was shown that such subjects were not taught in chiropractic schools. . . .

"[Here follows a discussion of the case of *Louisiana State Board of Medical Examiners v. Fife*, 162 La. 681, 111 So. 58, 54 A. L. R. 594.]

"While our law does not go to the extreme the statute of that state [Louisiana] does, and we might possibly not go to the lengths that court did in sustaining such an act [in the *Fife* case], it cannot be doubted that no one has a natural or absolute right to practice medicine or surgery; and that the state may, under its police power, regulate within reasonable bounds, for the protection of the public health, the practice of medicine and surgery by defining the qualifications one must possess before being licensed to practice the same; and that a chiropractor is deprived of no constitutional right by being required, before receiving a certificate to practice his profession, to have adequate knowledge of the subjects laid down by the statutes of this state."

Seventeen states and the District of Columbia have adopted "basic science" laws of varying degrees of similarity to our own. Connecticut and Wisconsin adopted such laws in 1925, and Washington, together with Minnesota and Nebraska, adopted basic science laws in 1927. The District of Columbia followed with such a law in 1928, and thereafter twelve more state legislatures enacted others: Arkansas in 1929; Oregon in 1933; Iowa in 1935; Arizona in 1936; Colorado, Kansas, Michigan, and Oklahoma in 1937; Florida, Rhode Island, and South Dakota in 1939; and New Mexico in 1941. Up to the present time, the constitutionality of these basic science laws has been questioned in only three states, including our own, and in every instance these laws have been upheld as constitutional. *State v. Wehinger, supra; State v. Broden,* 181 Minn. 341, 232

N. W. 517; *State ex rel. Shenk v. State Board of Examiners in the Basic Sciences,* 189 Minn. 1, 250 N. W. 353; *State v. Mielke,* 202 Minn. 114, 277 N. W. 420; *Stroud v. Crow,* 199 Ark. 814, 136 S. W. (2d) 1025.

In the *Shenk* case, *supra,* in which the law was applied with reference to a naturopath, it was said:

"There is claim for petitioner that the basic science law is unconstitutional because abridging his privileges and denying him due process and equal protection of law. The point is without merit. The law does not ban naturopathy. It does regulate it. We are not interested in the extent to which the medical profession may have sponsored the law nor their motives in doing so. It is enough that, since the days of Hippocrates through those of Galen, Versalius, and their modern successor anatomists, there has been great progress and splendid accomplishment in their science and the related arts of diagnosis and treatment. Lawmakers everywhere have taken note and have been doing so for a century or more. They began with laws facilitating the procuring of human bodies for dissection. . . . Other laws, regulatory and otherwise, followed. Finally came the restrictive regulation, through licensing, now familiar law everywhere. The basic science statute is the latest addition thereto. It departs somewhat from the older definition of the practice of medicine. Of its newer and broader category of the practice of healing, naturopaths have no complaint on constitutional grounds."

Appellant attacks the *Wehinger* decision by this court and likewise criticizes the decisions by the other courts, on the ground that they fail to take into consideration the fundamental distinction between medicine and chiropractic, and that, on the contrary, they *assume* that there is no difference between *medical* anatomy, physiology, pathology, and hygiene, on the one hand, and *chiropractic* anatomy, physiology, pathology, and hygiene, on the other. He then sets forth the medical definitions of the five subjects speci-

fied in the basic science law and contrasts them with chiropractic definitions of the same subjects.

The five subjects named in the basic science law pertain to separate and distinct fields of science. These sciences are, in themselves, exact and universal, and their principles operate with uniformity upon the human body, regardless of the method of healing, or treatment employed. The method of healing is simply the practitioner's art, as distinguished from the sciences which deal with the structure, composition, functions, diseases, and sanitation of the body. It may be said, broadly, that chiropractic places the emphasis of its study and treatment upon the spinal column, including the brain, the spinal cord, and spinal nerves, while the school of medicine does not so restrict its field of either study or treatment. Whatever may be the extent of the difference of view between the two schools, whether of kind or scope, appellant's real objection here is that the basic science law requires him to take an examination which is broader in scope than the chiropractic field of study and treatment. The stumbling-block, so far as he is concerned, is thus one of general educational requirements.

The various professions, particularly those involving the healing arts, have long been the subject of regulatory legislation setting out requirements for the granting of licenses to practice such professions. As stated in Rottschaefer, Constitutional Law (1939), pp. 468, 469:

"The requirement of a license necessarily involves a control by the government of who shall be permitted to pursue the licensed business or calling. Its aim is the protection of the public against injuries that it might suffer from the conduct of such business or calling. The state may, therefore, impose any conditions precedent to the grant of its consent which have a real and substantial relation to that objective. . . . The

principal field for the application of these principles has been in prescribing minimum standards of professional competence for such professions as the practice of medicine, dentistry, pharmacy, optometry, veterinary medicine, law, accountancy, and many others."

The legislature may therefore prescribe the standard of knowledge required of applicants for license to practice any of the healing arts, and the fact that it is broader in scope than the training which is given in chiropractic schools is not of itself enough to invalidate the legislative prescription. It is sufficient if the requirements have a real and substantial relation to the objective sought, which is the protection of the public health and welfare.

It is to be remembered that by the basic science law the legislature has prescribed one examination for all who desire to practice the healing arts, regardless of the school from which they come or the system which they desire to follow. The legislature must have intended thereby to set up a standard of basic, fundamental knowledge required of all practitioners in order to protect the public against incompetent attendance upon human ailments.

In *Johnson v. State*, 267 S. W. (Tex. Civ. App.) 1057, it was urged that the school of the chiropractor is sufficient in all its requirements thoroughly to prepare the student for this special branch of healing, and that the right to have this special branch recognized by law was denied by requiring an examination before a medical board. Answering that argument, the court said:

"Regardless of the school of medicine or system of practice followed by the practitioner of medicine in any of these systems, the general welfare of the people demands that such practitioner be able to detect, readily, the presence of disease, and to treat it in some manner recognized as appropriate for its removal. In order that assurance may be had that the one who treats diseases has this requisite qualification, the state

has the undoubted right to prescribe a general preparation to be made by one entering such profession, and also to prescribe that he shall have a knowledge of what the Legislature may deem the necessary scientific branches of such profession. . . . The fact that it [the law] requires a broader education than is given by the chiropractic college to meet these conditions cannot be urged as a discrimination against such schools of medicine."

The authorities are uniform to the effect that the legislature may adopt such regulations and restrictions of the healing arts as it may consider necessary for the public good, and the courts will not question the wisdom or desirability of such legislative requirements, so long as there is any reasonable basis upon which the legislative determination can rest. Among the many cases so holding are the following: *Hurwitz v. North,* 271 U. S. 40, 70 L. Ed. 818, 46 S. Ct. 384; *Graves v. Minnesota,* 272 U. S. 425, 71 L. Ed. 331, 47 S. Ct. 122; *Stroud v. Crow, supra; State v. Armstrong,* 38 Idaho 493, 225 Pac. 491, 33 A. L. R. 835; *People v. Witte,* 315 Ill. 282, 146 N. E. 178, 37 A. L. R. 672; *People ex rel. Dyer v. Walsh,* 346 Ill. 52, 178 N. E. 343; *Pitzer v. Indiana State Board,* 94 Ind. App. 631, 177 N. E. 876; *Louisiana State Board of Medical Examiners v. Fife,* 162 La. 681, 111 So. 58, 54 A. L. R. 594, affirmed 274 U. S. 720, 71 L. Ed. 1324, 47 S. Ct. 590; *Commonwealth v. Zimmerman,* 221 Mass. 184, 108 N. E. 893; *People v. Lewis,* 233 Mich. 240, 206 N. W. 553, 42 A. L. R. 1337; *Erdman v. Great Northern Life Ins. Co.,* 253 Mich. 579, 235 N. W. 260; *State ex rel. Shenk v. State Board of Examiners in the Basic Sciences, supra; State v. Smith,* 233 Mo. 242, 135 S. W. 465, 33 L. R. A. (N. S.) 179; *Harvey v. State,* 96 Neb. 786, 148 N. W. 924; *Carpenter v. State,* 106 Neb. 742, 184 N. W. 941; *State Board v. Maza,* 9 N. J. Misc. 171,

153 Atl. 259; *People v. Lee*, 272 N. Y. Supp. 817, 151 Misc. 431; *Allison v. State*, 127 Tex. Crim. App. 322, 76 S. W. (2d) 527; *Board of Medical Examiners v. Blair*, 57 Utah 516, 196 Pac. 221; *State v. Waldram*, 64 Utah 406, 231 Pac. 431; *Walkenhorst v. Kesler*, 92 Utah 312, 67 P. (2d) 654; *State v. Morrison*, 98 W. Va. 289, 127 S. E. 75.

■ Appellant makes the further contention that in the *Wehinger* case, *supra*, our court did not squarely meet the argument that the addition of chemistry to the list of subjects as one of the basic sciences is an unreasonable requirement.  To fortify his contention, he points out that his complaint contains the allegation, "Chemistry does not enter into the principle and practice of chiropractic," and that the allegation stood admitted by the respondent when the latter moved to dismiss the complaint.

Chemistry may not enter into the theory and practice of chiropractic, but every law of which we are aware, providing for the licensing of chiropractic, provides for learning in some subjects other than the theory and practice of chiropractic.  As pointed out above, the legislature set out the requirements for all practitioners of all schools of the healing art.  It is the relation of chemistry to this basic fundamental knowledge that is important and to which we must look, and not the relation of chemistry to the particular school of learning.  We certainly cannot say that it is unreasonable to require a knowledge of chemistry on the part of those who deal with human life and diseases.

■ Upon both reason and the overwhelming weight of authority, we hold that the basic science law does not offend the constitutional provisions relied upon by appellant, and that, regardless of its wisdom or propriety,

it is within the valid exercise of the police power of the state.

The judgment is affirmed.

ROBINSON, C. J., BEALS, MILLARD, and JEFFERS, JJ., concur.

[1] Reported in 130 P. (2d) 361.