The Honorable Terry Smith State Representative 181 Caroline Acres Road Hot Springs, Arkansas 71913
Dear Representative Smith:
This is in response to your request for an opinion on two questions relating to section 5 of Act 1348 of 1995, which amends A.C.A. §17-99-307 to provide that chapter 99 of title 17 of the Arkansas Code Annotated, entitled "Veterinarians and Animal Technicians," shall not be construed to prohibit
 [a]ny chiropractor licensed in this state and certified by the American Veterinary Chiropractic Association from performing chiropractic upon animals so long as the chiropractic is performed under the immediate supervision of an Arkansas licensed veterinarian.
Your questions are:
 1. As used in subdivision (b)(9) [the language quoted above], what does the term "immediate supervision" mean?
 2. Does the General Assembly have the power to restrict the authority of a chiropractor licensed in the state and certified by the American Veterinary Chiropractic Association to practice chiropractic on animals by providing that they may do so only under the immediate supervision of an Arkansas licensed veterinarian?
The fundamental rule of statutory interpretation is to give effect to the intent of the legislature, which is determined from the plain and usual accepted meaning of the language used. Pugh v. St Paul Fire MarineIns. Co., 317 Ark. 304, 877 S.W.2d 577 (1994); Worthen Nat. Bank ofBatesville v. McCuen, 317 Ark. 195, 876 S.W.2d 567 (1994).
The word "immediate" is defined by one source as meaning, in the context "[o]f person or thing in its relation to another" as "not separated by any intervening medium." THE CONCISE OXFORD DICTIONARY OF CURRENT ENGLISH 537 (J.B. Sykes ed. 6th ed. 1976). The same source defines "supervise" as to "[o]versee, superintend execution or performance of (thing) or actions or work of (person); hence "vision" and "superintend" as to "[h]ave the management (of), arrange and inspect working (of)." Id. at 1160, 1159.
From these definitions, it would appear that "immediate supervision," as used in the act, means the overseeing of a chiropractic procedure,[1]
without separation by any intervening medium; in other words, direct observation with the opportunity to advise or intervene.
I have located only one case interpreting the phrase "immediate supervision." In Salazar v. McGinn, 28 Utah 2d 176, 499 P.2d 857 (1972), the court considered a statute permitting an apprentice barber to "do any or all acts constituting the practice of barbering only when he is under the immediate supervision of a licensed barber. . . ." Salazar,499 P.2d at 858. The licenses of a barber and his apprentice were suspended after the apprentice was observed cutting a customer's hair while the barber was out of the shop for about an hour. The court reversed the suspension, holding that the phrase "immediate supervision" was not intended to require the master "to remain constantly at hand" or "to constantly look over the shoulder of the apprentice in supervising his work."
I believe, however, that the statute in Salazar is fundamentally different from section 5 of Act 1348, and that the two must be interpreted differently. The statute in Salazar governed the entire course of conduct between a licensed barber and apprentice and, taken to its logical extreme, would not permit the licensed barber to function as such at all, being required to devote his entire time and energy to supervision of the apprentice. Section 5, on the other hand, applies only to individual, discreet procedures undertaken by chiropractors, which suggests that closer supervision was contemplated. In addition, one purpose of the statute in Salazar was to "teach the apprentice the trade, which necessarily entails the operation of a barber shop on his own and without supervision." Salazar 499 P.2d at 858. The only purpose of section 5, on the other hand, appears to be to ensure that chiropractors do not perform chiropractic upon animals without supervision; Act 1348 does not contemplate that chiropractors will become veterinarians.
It is also true that a line of Arkansas cases has interpreted the phrase "direct supervision" as not invariably requiring the physical presence of the supervisor. See Martindill v. State, 40 Ark. App. 16, 839 S.W.2d 545
(1992); Turnbull v. State, 22 Ark. App. 18, 731 S.W.2d 794 (1987); McAfeev. State, 290 Ark. 446, 720 S.W.2d 307 (1986); Brewer v. State,286 Ark. 1, 688 S.W.2d 736 (1985). The statute at issue in those cases, A.C.A. § 12-9-303, also must be distinguished from section 5, however, as addressing the entire relationship between auxiliary and certified law enforcement officers. In addition, and more importantly, the definition of the phrase "direct supervision" contained in A.C.A. § 12-9-301(8) (Pamp. 1995) expressly provides that the physical presence of the supervisor is not required.
In view of the plain meanings of the words used and the apparent legislative intent, it is my opinion that the phrase "immediate supervision," as used in section 5 of Act 1348 of 1995, means a veterinarian's direct observation of, with the opportunity to advise or intervene in, each veterinary chiropractic procedure.
The legislature undoubtedly has power to regulate the practice of chiropractic and, to that end, has enacted the Arkansas Chiropractic Practices Act, A.C.A. §§ 17-81-101 to 17-81-316 (Repl. 1992 and Supp. 1993), which requires, among other things, that chiropractors be licensed by the state. A.C.A. § 17-81-301 (Repl. 1992). The "practice of chiropractic," as defined and regulated by the Arkansas Chiropractic Practices Act, includes practice upon human patients only. A.C.A. §17-81-102(3)(A).
The legislature has also enacted the Arkansas Veterinary Medical Practice Act, A.C.A. §§ 17-99-101 to 17-99-313 (Repl. 1992 and Supp. 1993), to regulate the practice of veterinary medicine. The phrase "practice of veterinary medicine" is defined in the Arkansas Veterinary Medical Practice Act as including "animal chiropractic." A.C.A. §17-99-102(2)(A).
From the foregoing, it is apparent that the legislature has determined that the practice of chiropractic upon animals generally should be performed by individuals who are licensed and regulated as veterinarians, rather than as chiropractors. Section 5 of Act 1348 provides a limited exception to this general rule and thus is more properly seen as expanding, rather than restricting, the authority of chiropractors to practice upon animals.
The legislature, in the exercise of the police power, regulate the practice of medicine. State Medical Bd. v. McCrary, 95 Ark. 511,130 S.W. 544 (1910); Thompson v. Van Lear, 77 Ark. 506, 92 S.W. 773 (1906);Richardson v. State, 47 Ark. 562, 2 S.W. 187 (1886). Chiropractic and veterinary medicine are both branches of the practice of medicine, to which such regulation may extend. Buhr v. Board of ChiropracticExaminers, 261 Ark. 319, 547 S.W.2d 762 (1977) (chiropractic); Pistolev. State, 68 Tex. Crim. 127, 150 S.W. 618 (1912) (veterinary medicine).
Regulations and restrictions imposed upon the practitioners of a particular branch of medical science will not be held to be unconstitutional unless they are unreasonable, arbitrary, and without any relation to such practice. Stroud v. Crow, 199 Ark. 814, 136 S.W.2d 1025
(1940), appeal dismissed for want of substantial federal question,311 U.S. 607 (1940). Legislative enactments regulating the practice of medicine are presumed to be valid. Id.
I have located no cases addressing the reasonableness of a law prohibiting a chiropractor from practicing upon animals unless also licensed as a veterinarian or except under the supervision of a veterinarian. In my opinion, however, such a regulatory scheme is not unreasonable, arbitrary, or without relation to the practice of chiropractic and veterinary medicine, and therefore is not unconstitutional. It would not appear to be unreasonable for the legislature to conclude, as it did, that all medical treatment of animals should be performed by licensed veterinarians. That being the case, a limited exception to that rule in favor of certain chiropractors could not, in my opinion, constitute unreasonable or arbitrary treatment of chiropractors.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] It should be noted that the act specifies that "the chiropractic" (i.e., the procedure itself) will be under immediate supervision. The language suggests a legislative intent that every veterinary chiropractic procedure addressed therein will be performed under supervision, and is evidence that the legislature intended more pervasive supervision than might have been required by language specifying that "the chiropractor" would be under supervision.