Mr. Tom Allen, Chair Homes Inspector Advisory Board c/o Office of the Secretary of State Corporations Division State Capitol Little Rock, AR 72201-1094
Dear Mr. Allen:
You have requested an Attorney General opinion concerning certain state law requirements for registration as a home inspector.
Your questions are:
 (1) What is the legal meaning of the term "direct supervision," as used in A.C.A. § 17-52-103(a)(3)(B)? (Must the supervisor be present during the inspection?)
 (2) Does the requirement of 20 home inspections, set forth in A.C.A. § 17-52-103(a)(3)(D), mean that the 20 home inspections must have been conducted prior to the effective date of the statute, or does it mean that the inspections must have been conducted in accordance with the laws of the state in which they were conducted?
RESPONSE
Question 1 — What is the legal meaning of the term "direct supervision,"as used in A.C.A. § 17-52-103(a)(3)(B)? (Must the supervisor be presentduring the inspection?)
It is my opinion, as explained more fully below, that the term "direct supervision," as used in A.C.A. § 17-52-103(a)(3)(B), does not require the supervisor to be physically present during the inspection, provided that the supervisor reviews the work of the applicant by physically inspecting the property himself to assure that the applicant's conclusions were correct.
A.C.A. § 17-52-103(a)(3)(B) states:
 (a) A person applying for registration, or renewal of registration, as a home inspector shall submit an application, under oath, upon a form to be prescribed by the Secretary of State which shall include as a minimum, the following information pertaining to the applicant:
* * *
(3) Evidence of one (1) of the following professional qualifications:
* * *
 (B) A high school diploma or its equivalent, work experience doing home inspections for at least one (1) year under the direct supervision of a registered home inspector, and completion of one hundred (100) home inspections for compensation.
A.C.A. § 17-52-103(a)(3)(B) (emphasis added).
The term "direct supervision," as used in the above-quoted section, is not defined. I must note that the Arkansas courts will give considerable deference to the board's interpretation of this term, and generally will uphold that interpretation unless it is clearly wrong. See Arkansas StateMed. Bd. v. Bolding, 324 Ark. 238, 920 S.W.2d 825 (1996). Therefore, if the board reaches a consensus as to its preferred interpretation of the term "direct supervision," that interpretation will likely be upheld if challenged (unless it is clearly wrong).
It is my opinion that the term "direct supervision," as used in A.C.A. § 17-52-103(a)(3)(B), does not reflect an intent on the part of the legislature that the supervisor be physically present with the applicant during the inspection. My conclusion regarding this matter is based upon a reading of the Arkansas Home Inspectors Registration Act as a whole, of which A.C.A. § 17-52-103 is a part. This Act includes a statement of the legislative intent behind the Act. That statement is helpful in addressing your question:
 It is the intent of the legislature in enacting this chapter to assure that consumers of home inspection services can rely upon the competence of home inspectors.
A.C.A. § 17-52-101.
Also pertinent to your question are the following provisions:
 (c) All home inspections conducted by persons registered under this chapter shall be conducted in adherence to the Standards of Practice and Code of Ethics of the American Society of Home Inspectors, the Arkansas Association of Real Estate Inspectors, or equivalent professional home inspection association. Copies of these standards shall be on deposit with the Secretary of State.
 (d) It is the duty of all home inspectors doing business in the State of Arkansas to conduct home inspections with the degree of care that a reasonably prudent home inspector would exercise.
A.C.A. § 17-52-202(c)(d).
The above-quoted provisions indicate that the purpose of the Act was to assure that home inspections be conducted competently, and that the public be able to rely on the competence of home inspectors. In addition, the qualifications requirements, of which the "direct supervision" provision is as part, indicate a legislative intent that applicants for registration have prior experience conducting home inspections.
It is my opinion that these purposes are fully served by allowing unregistered applicants to conduct home inspections without the physical presence of the supervisor, provided that the supervisor reviews the work of the applicant by physically inspecting the property to assure that the applicant's conclusions are correct. This physical review of the applicant's work is necessary, in my opinion, in order for the supervisor to be in compliance with the Act. It is clear that the supervisor must "sign off" on the inspection as though it is his own work in order for the inspection to comply with the requirement that all inspections be conducted by registered inspectors. In order to assure that the inspection on which the supervisor is signing off was conducted in accordance with the standards of competence and prudence required by the Act, he must review the applicant's work by physically inspecting the property himself. If he does this before signing off on the inspection, the inspection will have been conducted (procedurally) in compliance with the Act. However, nothing in the Act indicates that this review of the applicant's work must take place during the applicant's inspection. It may be conducted after the applicant has completed the inspection. (Of course, as a practical matter, many supervisors may prefer to be physically present with the applicant during the applicant's inspection simply in order to save time.)
My interpretation of the term "direct supervision" is consistent with the interpretation that has been given to that term by the Arkansas courts in other statutory contexts. For example, in Martindill v. State,40 Ark. App. 16, 839 S.W.2d 545 (1992), the Arkansas Court of Appeals interpreted a statute (A.C.A. § 12-9-303) that required that auxiliary law enforcement officers be under the "direct supervision" of a full-time certified law enforcement officer in order to make an arrest. It was contended that a particular arrest was unlawful because the supervising officer was not physically present when the arrest was made. The court rejected this contention and held that the statute did not require the physical presence of the supervising officer if the supervisor was in contact with the auxiliary and gave the auxiliary further instruction in handling the situation. Accord, Turnbull v. State, 22 Ark. App. 18,731 S.W.2d 794 (1987) (radio contact sufficed as supervision); McAfee v.State, 290 Ark. 446, 720 S.W.2d 307 (1986) (it would be unreasonable to read the "direct supervision" requirement as requiring the physical presence of the supervisor before an arrest could be made).
These authorities support my view that if the purpose of the Act can be served without requiring the physical presence of the supervisor, the supervisor's physical presence is not necessary. As explained above, the purpose of the Act will be fully served if the supervisor adequately reviews the applicant's work by conducting his own physical inspection of the property.
Question 2 — Does the requirement of 20 home inspections, set forth inA.C.A. § 17-52-103(a)(3)(D), mean that the 20 home inspections must havebeen conducted prior to the effective date of the statute, or does itmean that the inspections must have been conducted in accordance with thelaws of the state in which they were conducted?
It is my opinion that the requirement of 20 home inspections, set forth in A.C.A. § 17-52-103(a)(3)(D) of the Act, applies in situations where the 20 inspections were conducted prior to the effective date of the Act, or were lawfully conducted in another state.
The requirement to which you refer states:
 (a) A person applying for registration, or renewal of registration, as a home inspector shall submit an application, under oath, upon a form to be prescribed by the Secretary of State which shall include as a minimum, the following information pertaining to the applicant:
* * *
(3) Evidence of one (1) of the following professional qualifications:
* * *
 (D) A high school diploma or its equivalent, work experience doing home inspections for at least one (1) year, completion of at least twenty (20) home inspections for compensation, and successful completion of at least ninety (90) core hours of a real estate inspection education program.
A.C.A. § 17-52-103(a)(3)(D) (emphasis added).
I interpret the above-quoted provision to be, in essence, a "grandfather clause" that was included for the benefit of inspectors who had considerable experience at the time the Act was passed.
My conclusion regarding this issue is based upon a reading of the Act as a whole. The Act includes a provision under which it is a misdemeanor to conduct a home inspection without being registered as required by the Act. See A.C.A. § 17-52-202. If the provisions of Section 103(a)(3)(D) were interpreted to allow unregistered applicants to conduct inspections for the purpose of obtaining registration, the misdemeanor provisions of Section 202 would be meaningless. Moreover, such an interpretation would render meaningless the provision of Section 103(a)(3)(B), discussed in response to Question 1, under which unregistered applicants may conduct home inspections under the direct supervision of a registered home inspector. Finally, such an interpretation would be directly contrary to the Act's stated purpose of assuring the competence of inspectors by requiring that inspections be conducted only by registered inspectors.
Accordingly, I conclude that Section 103(a)(3)(D) must be read as a grandfather clause, with the effect that the 20 inspections that are allowed thereunder must have been conducted prior to the effective date of the Act, or must have been lawfully conducted in another state.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh